UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AUSTIN AIR SYSTEMS, LIMITED,

                Plaintiff,

    v.

SAGER ELECTRICAL SUPPLY CO., INC., et al.,

                Defendants.

**19-CV-562-JLS-HBS**

**Order**

---

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b). Dkt. No. 14. Plaintiff Austin Air Systems, Limited brings this action against Defendants Sager Electrical Supply Company, Inc. and ebm-papst Inc., alleging that Defendants failed to properly design and engineer air purifiers (and parts thereof) that met the standards required for sale in China. *See generally* Dkt. No. 25. Currently before the Court is Sager's motion to compel and for sanctions against Austin. Dkt. No. 48. Austin opposes the motion. Dkt. No. 52. For the reasons that follow, Sager's motion is GRANTED IN PART.

## DISCUSSION

In its motion, Sager identifies three categories of discovery for which it seeks relief. The Court addresses each category in turn.

### I. Violations of the Discovery Protocol

In October 2019, the parties agreed to a discovery protocol. *See* Dkt. No. 48-4. In December 2019, Sager served its requests for production and interrogatories, and in February 2020, Austin provided its responses, which included over 6,800 pages of PDF documents. In March 2020, Sager notified Austin that its documents did not conform to the discovery protocol. Dkt. No. 48-12. It

requested (1) all of the metadata associated with the produced documents; (2) the native files of all produced emails; and (3) that all scanned documents be reproduced as separate files. *Id.* Sager argues that Austin has still failed to comply with these requests ten months later, thus necessitating the present motion. Sager requests that Austin be compelled to comply by January 30, 2021.

Austin does not dispute that Sager's requests are appropriate and consistent with the discovery protocol; it only argues that the COVID-19 Pandemic hampered its ability to respond in a timely manner. Austin states that it has hired an IT consultant to obtain and produce the necessary documents, and that "production will occur no later than February 15, 2021." Dkt. No. 52-2 at 8.

In reply, Sager argues that production should occur by January 30, not February 15, given the other discovery deadlines that are approaching: motions to compel are due by February 17, Sager's expert report is due by March 5, and discovery closes on March 19. Dkt. No. 53 at 7. Furthermore, Sager notes that "no depositions have been scheduled" in part because of Austin's delayed response.

Thus, the only dispute over this category of documents is timing. While recognizing Sager's frustration over the long delays, the Court declines to order Austin to comply by January 30—a mere day after entry of this Order. Regardless of Austin's previous delays, it would be unfair for the Court to demand such a quick turnaround. At this point, the Court seeks to ensure not just a speedy, but also a complete, discovery response, so that all discovery requests are properly answered and no more disputes arise. That consideration weighs in favor of giving Austin additional time so that it can ensure that its production fully complies with Sager's requests. For that reason, the Court will give Austin until February 15, 2021 to respond to this category of requests. To the extent Sager needs further extensions of the discovery deadlines as a result, it may file a motion to that effect.

However, the Court wishes to make clear that Austin *must* provide the requested discovery no later than February 15, 2021.  Austin has had ample time to respond to Sager's requests, and it is now on notice of its need to prioritize this issue.  If Austin fails to serve the production on Sager by February 15, Sager may again move to compel and for sanctions, and the Court will take the matter under advisement.

## II.     Internal Communications

Sager requests that Austin be ordered to produce all internal communications responsive to Requests for Production Nos. 2, 5, 8-11, 13-23, and 30.[1]   Dkt. No. 48-1 at 19-20.  Austin responds that its IT consultant will search Austin's records and produce any responsive documents.  Dkt. No. 52-2 at 9.  Accordingly, this dispute appears to be resolved.  Austin shall produce all responsive internal communications by February 15, 2021, and shall include an affidavit by someone with knowledge attesting to the search conducted for such documents and the results thereof.

## III.    Financial Statements

In its discovery requests, Sager sought various documentation from Austin to investigate Austin's claimed damages.  Specifically, Sager requested Austin's financial statements for its entire business from 2014 to 2019, financial statements for all business conducted in China since 2003, and all other "documents and communications that demonstrate the damages [Austin] seeks in this action."  Dkt. No. 48-1 at 20-21; *see also* Dkt. No. 48-6 at 12.  Austin only provided what Sager describes as "20 pages of undecipherable 'Accounts Receivable Detail Reports' and 220 pages of

---

[1] Sager also moved to compel the production of drawings of Austin's air purifiers.  *See* Dkt. No. 48-1 at 17-18.  Austin responded that it has disclosed all the drawings it has, Dkt. No. 52-2 at 9-10, and Sager concedes that Austin "cannot be compelled to produce documents that do not exist."  Dkt. No. 53 at 8.

invoices for a variety of products, none of which is labeled as the [air purifiers] at issue in this suit." Dkt. No. 48-1 at 21. Sager believes this production must be incomplete, given that Austin's interrogatory responses identify highly specific figures for damages. *See* Dkt. No. 48-11 at 9 (stating that Austin's damages include "tooling and parts expenses for the Elite model air purifiers of at least $559,619.16; tooling and part expenses for the Classic model air purifiers of at least $185,265.98; amounts paid to [Sager] of at least $1,107,294.05; amounts owed to [Sager] of at least $266,518.65; cancelled orders of at least $1,445,711.99; lost profits on cancelled orders of at least $3,669,995.40").

Austin responds that the documents it provided "are the closest financial information responsive to Sager's demands concerning [Austin's] business in China." Dkt. No. 52-2 at 10. Austin argues that it should not be required to produce financial statements for its entire business, as such documents are not relevant to this action, which concerns just the Chinese market. Austin also states, without elaboration, that it is not required to produce "information prepared in anticipation of litigation or the subject of attorney work product." *Id.* at 11.

At this time, the Court declines to fully resolve this dispute. The Court is unable to determine what information and which documents may be relevant to damages without a clearer picture of how Austin is computing its damages. If Austin is only seeking to recoup specific losses for one product line, financial information pertaining to unrelated lines of business may be irrelevant. *See, e.g.*, *Sustainable Sourcing, LLC v. Brandstorm, Inc.*, No. 12-CV-30093, 2017 WL 217747, at *2 (D. Mass. Jan. 18, 2017) (finding overbroad request for all financial documents for defendants' entire business, where dispute concerned only one product). On the other hand, such information could be relevant

to the extent Austin is relying on its overall financial condition and business to, for example, calculate lost profits.

The Court concludes that the better course is for Austin to provide Sager with an itemized list of each category of its claimed damages, which shall include detailed explanations for how each category is calculated, and shall include all documentation used to support such damages, even if Austin already produced the documentation. Indeed, Rule 26(a)(1) required Austin to do so as part of initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (noting that the rule "does not merely require a plaintiff to describe its damages in general terms . . . [but] to provide a 'computation' of each category of damages, and to produce the documents on which that computation is based"). To the extent Austin believes some documents or information is exempt from disclosure, it must provide a privilege log. *See* Fed. R. Civ. P. 26(b)(5). Austin's itemized disclosure will help to define the universe of relevant facts. If, after disclosure, Sager continues to believe Austin's overall financials remain relevant, it may move for further relief.

## IV. Sanctions

In accordance with Rule 37, Sager requests sanctions in the form of reasonable attorney's fees it incurred in bringing this motion. Sager states that it served its document requests and interrogatories in December 2019; that Austin did not initially provide responses until late February 2020; that it notified Austin of the deficiencies in its responses in early March 2020; and that still, approximately ten months later, Austin has yet to rectify those deficiencies.

Austin concedes that it has not fully complied with Sager's demands, but it contends that sanctions are inappropriate because its "inability to provide full discovery production" was due to the COVID-19 Pandemic. Dkt. No. 52-2 at 13. Austin's president avers that demand for air purifiers "exploded" in March 2020, and it did not have the resources or personnel "to devote to the discovery in this lawsuit." Dkt. No. 52 at 2. As an essential business located in New York, Austin has remained open during the pandemic. *Id.* As for Austin's counsel, he avers that his law office closed from Mid-March to mid-June 2020. Thereafter, he and Austin attempted to move "forward with discovery production but continued to be hampered and hindered by the overwhelming effects of the Covid-19 pandemic." Dkt. No. 52-1 at 3. At some point during late fall 2020, Austin determined that an IT consultant would be necessary to respond to discovery, as its sole IT employee was "entirely invested in meeting the technological needs of the company that have arisen with this unprecedented demand." Dkt. No. 52 at 3. The IT consultant is now compiling the requested discovery, and is expected to finish by February 15, 2021.

"Rule 37 provides that if a motion to compel is granted, or if the disclosure or requested discovery is provided after the motion was filed—the court *must* . . . award reasonable motion expenses incurred in making the motion." *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (internal quotation marks omitted). "Thus, the Rule sets forth a rebuttal presumption in favor of awarding sanctions against a party that complies with discovery demands after the filing of a motion to compel." *Id.* "The Court may not award reasonable expenses, however, if the nondisclosure was substantially justified or other circumstances make an award of expenses unjust." *Id.* (internal quotation marks omitted). "[T]he burden of persuasion is on the losing party

6

to avoid assessment of expenses and fees rather than . . . on the winning party to obtain such an award." *Pegoraro v. Marrero*, No. 10-CV-51, 2012 WL 5964395, at *4 (S.D.N.Y. Nov. 28, 2012) (internal brackets omitted).

Austin has not carried its burden to avoid the assessment of expenses and fees. Of course, the Court recognizes that the pandemic, with all its attendant burdens and difficulties, is a clearly unforeseeable factor that could reasonably impede a party's ability to respond to discovery. *See Metzgar v. U.S. Plumbers & Steamfitters Local No. 22 Pension Fund*, No. 13-CV-85, 2018 WL 9781178, at *1 (W.D.N.Y. Nov. 20, 2018) ("An award may be unjust if the refusing party's failure to provide discovery was the result of circumstances beyond its control."). The Court understands that, since the pandemic began, Austin may have found itself facing operational and logistical challenges that demanded its attention and deserved priority over this litigation.

But even accounting for those circumstances, Austin fails to explain why it waited nearly six months to hire an outside IT consultant to complete discovery. The record suggests that Austin's operations were overwhelmed almost immediately once the pandemic started. *See* Dkt. No. 52 at 3. Likewise, Austin's only IT employee—who was initially tasked with responding to Sager's discovery requests—became "entirely invested in meeting the technological needs of the company." *Id.* In mid-June 2020, when Austin's counsel returned to work after the shutdown order, he contacted Austin and notified it of the outstanding discovery issues. Dkt. No. 48-17 at 2. At that point, it seems that Austin would have been reasonably aware that, given the intensity of its operations, it would need to fashion some sort of alternative arrangement to fulfill its discovery obligations.

7

Instead, it waited nearly six months to do so, and Austin offers no explanation for that delay. The Court could understand if Austin required a few months after June 2020 to vet and hire a consultant, but six months is facially unreasonable. Absent some explanation as to why it took Austin six months to determine that it needed outside assistance, and to obtain that assistance, the Court cannot find Austin's explanation persuasive. Having failed to carry its burden, expenses and attorney's fees are properly imposed against Austin.

Accordingly, the Court grants Sager's request for an award of reasonable attorney's fees incurred in bringing the motion to compel. Sager shall file a fee application by February 5, 2021.

## CONCLUSION

For the reasons stated above, Sager's motion to compel (Dkt. No. 48) is GRANTED IN PART, as follows:

1. Sager's request for sanctions is granted. By **February 5, 2021**, Sager may file a motion for reasonable attorney's fees incurred in making its motion.

2. By **February 15, 2021**, Austin shall re-produce all previously disclosed discovery, and shall do so in accordance with the parties' discovery protocol. In doing so, Austin shall (a) include an affidavit from someone with knowledge attesting to the extent of the search and the results thereof; (b) produce underlying metadata (including native email files) for its PDF Production as requested by Sager in the March 2 Letter; and (c) reproduce any scanned documents in the PDF Production as standalone files rather than merged.

3. By **February 15, 2021**, Austin shall produce all internal communications responsive to Sager's requests, and shall include an affidavit by someone with knowledge attesting to the search conducted for such documents and the results thereof.

4. By **February 15, 2021**, Austin shall provide Sager with an itemized list of each category of its claimed damages, which shall include detailed explanations for how each category is calculated, and shall include all documentation used to support such damages, even if Austin already produced the documentation. To the extent Austin believes some documents or information is exempt from disclosure, it must provide a privilege log.

SO ORDERED.

/s/Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

DATED: January 29, 2021