UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AUSTIN AIR SYSTEMS, LIMITED,

                                Plaintiff,

                  v.

SAGER ELECTRICAL SUPPLY COMPANY, INC.,
  Also known as Sager Electronics,
  and ebm-papst Inc.,

                                Defendants.

DECISION
and
ORDER

19-CV-562JLS(F)

_____

SAGER ELECTRICAL SUPPLY COMPANY, INC.,
  also known as Sager Electronic,

                         Counter Claimant,

                  v.

AUSTIN AIR SYSTEMS, LIMITED,

                         Counter Defendant.

_____

APPEARANCES:       GROSS SHUMAN P.C.
                      Attorneys for Plaintiff and Counter Defendant
                      HUGH C. CARLIN and
                      KEVIN R. LELONEK, of Counsel
                      465 Main Street, Suite 600
                      Buffalo, New York  14203

                      PHILLIPS LYTLE LLP
                      Attorneys for Defendant Sager Electronics
                      ERIN C. BOREK and
                      WILLIAM D. CHRIST, of Counsel
                      One Canalside
                      125 Main Street
                      Buffalo, New York  14203-2887

KELLY HART & HALLMAN LLP
Attorneys for Defendant and Counter Claimant
  Sager Electrical Supply Company, Inc.
ELIZABETH A. CUNEO and
WILLIAM N. WARREN, of Counsel
201 Main Street
Suite 2500
Fort Worth, Texas  76102

HALLORAN & SAGE LLP
Attorneys for Defendant ebm-papst
JENNIFER A. PEDEVILLANO, and
JOSEPH G. FORTNER, JR.
One Goodwin Square
225 Asylum Street
Hartford, Connecticut  06103-4304

## **JURISDICTION**

On May 30, 2019, this case was referred to United States Magistrate Judge

Hugh B. Scott by Honorable Lawrence J. Vilardo[1] for all pretrial matters including

preparation of a report and recommendation on dispositive motions.  By Text Order

entered March 5, 2021 (Dkt. 71) the Clerk of Court reassigned the case referral to the

undersigned.  The matter is presently before the court on motions for judgment on the

pleadings filed November 13, 2020, by Defendant Sager Electrical Supply Company,

Inc. (Dkt. 39), and December 7, 2020, by Defendant ebm-papst, Inc.[2] (Dkt. 41),

Defendants' joint motion to preclude Plaintiff's expert witnesses filed June 8, 2021 (Dkt.

75), Defendant ebm-papst Inc.'s motion filed June 14, 2021, to compel production of

tangible things and information (Dkt. 79), Defendant Sager Electrical Supply Company,

Inc.'s motions filed June 18, 2021 to compel production of financial records (Dkt. 82),

---

[1] On February 18, 2020, the matter was reassigned to Hon. John L. Sinatra, Jr. (Dkt. 35).
[2] For reasons not in the record, this Defendant uses only lower case letters in its name.

2

and to compel production of Mecent[3] communications (Dkt. 83), Defendant Sager Electrical Supply Company, Inc.'s motion filed June 23, 2021, for leave to file a second amended complaint (Dkt. 84), and Plaintiff's motion filed July 13, 2021, for leave to file a second amended complaint and to extend the scheduling order (Dkt. 86).

## **BACKGROUND**

Plaintiff Austin Air Systems, Limited ("Plaintiff"), is a manufacturer of air purifiers sold world-wide including in China.  Defendant Sager Electrical Supply Company, Inc. ("Sager") is a Massachusetts corporation regularly engaged in the business of distributing and selling machine parts and accessories including, as relevant to the instant case, fan motor assemblies used in residential air purifiers.  Defendant ebm-papst Inc. ("ebm") is a Connecticut corporation regularly engaged in the business of designing and manufacturing machine parts and accessories including, *inter alia*, fan motor assemblies.  The premise of this action is whether Sager and ebm (together, "Defendants"), breached a contract to design, manufacture, and supply Plaintiff with fan motor assemblies for use in residential air purifiers manufactured and sold by Plaintiff globally, including in China where the fan motors are required to meet strict air flow and noise level standards.

On March 18, 2019, Plaintiff commenced this breach of contract action by filing the complaint (Dkt. 1-2) in New York State Supreme Court, Erie County, with an acknowledgement of service filed April 16, 2019, indicating Sager, then the sole defendant, accepted service of process on April 15, 2019.  On May 1, 2019, Sager

---

[3] Austin Mecent ("Mecent") is Plaintiff's distributor in China.

removed the action to this court asserting diversity of citizenship as the jurisdictional basis.  The September 30, 2019 deadline for joining parties and amending pleadings set by the first scheduling order filed August 27, 2019 (Dkt. 19) was, by stipulation entered by Text Order dated October 1, 2019 (Dkt. 21), extended to November 1, 2019.  Accordingly, pn October 7, 2019, Plaintiff filed the Amended Complaint (Dkt. 25) ("Amended Complaint"), naming Sager and ebm as Defendants.  The Amended Complaint asserts four claims for relief including common law breach of contract ("First Claim"), breach of implied warranty of fitness for a particular purpose pursuant to Uniform Commercial Code § 2-315 ("Second Claim"), fraud ("Third Claim"), and declaratory judgment ("Fourth Claim").  On October 18, 2019, Sager filed its answer to the Amended Complaint (Dkt. 27), asserting counterclaims against Plaintiff for breach of contract ("First Counterclaim"), and declaratory judgment ("Second Counterclaim").  On October 25, 2019, Plaintiff answered the counterclaims.  (Dkt. 30).  On December 12, 2019, ebm filed an answer to the Amended Complaint (Dkt. 32).

On November 13, 2020, Sager filed a motion for judgment on the pleadings (Dkt. 39) ("Sager's Rule 12(c) Motion"), attaching the Declaration of Frank Flynn (Dkt. 39-1) ("Flynn Declaration"), with exhibits A through C (Dkts. 39-2 through 39-4) ("Flynn Dec. Exh(s). __"), and the Memorandum of Law in Support of Defendant Sager Electrical Supply Company, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings (Dkt. 39-5) ("Sager's Rule 12(c) Memorandum").  On December 7, 2020, ebm filed a motion for judgment on the pleadings (Dkt. 41) ("ebm's Rule 12(c) Motion"), attaching the Memorandum of Law in Support of Defendant ebm-papst Inc.'s Rule 12(c) Motion for Judgment on the Pleadings (Dkt. 41-1) ("ebm's Rule 12(c) Memorandum"), and exhibit

4

A (Dkt. 41-2) ("ebm's Exh. A").  On December 18, 2020, Plaintiff filed Plaintiff's Declaration [of Lauren McMillan] in Opposition to Sager Electrical Supply Company, Inc.'s Rule 12(c) Motion (Dkt. 45) ("McMillan Declaration"), attaching exhibits A through AA (Dkts. 45-1 through 45-27) ("McMillan Dec. Exh(s). __"), the Attorney's Declaration [of Frank J. Jacobson] in Opposition to Sager Electrical Supply Company, Inc.'s Rule 12(c) Motion (Dkt. 45-28) ("Jacobson Declaration"), and the Memorandum of Law in Opposition to Sager Electrical Supply Company, Inc.'s Rule 12(c) Motion (Dkt. 45-29) ("Plaintiff's Response to Sager's Rule 12(c) Motion").  On January 8, 2021, Sager filed the Reply in Support of Sager Electrical Supply Company, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings (Dkt. 50) ("Sager's Rule 12(c) Reply").  On January 15, 2021, Plaintiff filed the Memorandum of Law in Opposition to ebm-papst, Inc's Rule 12(c) Motion (Dkt. 51) ("Plaintiff's Response to ebm's Rule 12(c) Motion").  On January 29, 2021, ebm filed the Reply Memorandum in Support of Defendant ebm-papst, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings (Dkt. 55) ("ebm's Rule 12(c) Reply").

On June 8, 2021, Defendants Sager and ebm jointly filed a Motion to Preclude Plaintiff's Expert Witness[es] (Dkt. 75) ("Defendants' Motion to Preclude"), attaching the Memorandum of Law in Support of Defendants' Rule 37(c) Motion to Preclude Plaintiff's Expert Witness[es] (Dkt. 75-1) ("Defendants' Rule 37(c) Memorandum"), and the Affidavit of Joseph G. Fortner, Jr. (Dkt. 75-2) ("First Fortner Affidavit").  On June 14, 2021, ebm filed its Notice of Rule 37 Motion to Compel Production of Tangible Things and Information (Dkt. 79) ("ebm's Motion to Compel"), attaching the Memorandum of Law in Support of Defendant ebm-papst, Inc.'s Rule 37 Motion to Compel Production of Tangible Things (Dkt. 79-1) ("ebm's Memorandum – Motion to Compel"), exhibits A

through F filed in one volume (Dkt. 79-2), and exhibits G though Y filed in a second

volume (Dkt. 79-3) ("ebm's Motion to Compel Exh(s). __"), and the Affidavit of Joseph

G. Fortner (Dkt. 79-4) ("Second Fortner Affidavit").  On June 18, 2021, Defendant Sager

filed two motions to compel.  The first, a Motion to Compel Production of Financial

Records (Dkt. 82) ("Sager's First Motion to Compel"), is supported by the attached

Declaration of Elizabeth A. Cuneo in Support of Defendant's Motion to Compel

Production of Financial Records (Dkt. 82-1) ("First Cuneo Declaration"), with exhibits A

through H (Dkts. 82-2 through 82-9) ("Sager's First Motion to Compel Exh(s). __"), and

the Memorandum of Law in Support of Defendant's Motion to Compel Production of

Financial Records (Dkt. 82-10) ("Sager's Memorandum – First Motion to Compel").  The

second motion is a Motion to Compel Production of Mecent Communications (Dkt. 83)

("Sager's Second Motion to Compel"), and is supported by the Declaration of Bill

Warren in Support of Defendant's Motion to Compel Production of Mecent

Communications (Dkt. 83-1) ("First Warren Declaration"), with exhibits A through F

(Dkts. 82-2 through 82-7) ("Sager's Second Motion to Compel Exh(s). __"), and the

Memorandum of Law in Support of Defendant's Motion to Compel Production of

Plaintiff's Communications with Austin Mecent (Dkt. 82-8) ("Sager's Memorandum –

Second Motion to Compel").

On June 23, 2021, Sager filed its Motion for Leave to File Defendant's Second

Amended Answer, Affirmative Defenses, and Counterclaim (Dkt. 84) ("Sager's Motion to

Amend"), attaching Declaration of Elizabeth A. Cuneo in Support of Defendant's Motion

for Leave to Amend (Dkt. 84-1) ("Second Cuneo Declaration"), with exhibits A through D

(Dkts. 84-2 through 84-5) ("Sager's Motion to Amend Exh(s). __"), and the

Memorandum of Law in Support of Defendant's Motion for Leave to File Defendant's Second Amended Answer, Affirmative Defenses, and Counterclaim (Dkt. 84-6) ("Sager's Memorandum – Motion to Amend").  On July 13, 2021, Plaintiff filed the Motion to Amend Complaint and Extend Scheduling Order (Dkt. 86) ("Plaintiff's Motion to Amend"), attaching the Declaration of Hugh C. Carlin (Dkt, 86-1) ("First Carlin Declaration"), with exhibits 1 through 36 (Dkts. 86-2 through 86-37)[4] ("Plaintiff's Exh(s). __"), and the Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend the Complaint and to Extend the Scheduling Order (Dkt. 86-38) ("Plaintiff's Memorandum – Amend").

There were three filings by Plaintiff on July 14, 2021.  Plaintiff filed the Declaration [of Hugh C. Carlin] in Opposition to Defendants' Motion to Preclude Plaintiff's Expert Witnesses (Dkt. No. 75) (Dkt. 87) ("Second Carlin Declaration"). Plaintiff also filed Plaintiff's Memorandum of Law in Opposition to Defendant ebm-papst, Inc.'s Motion to Compel Production of Tangible Things and Information (Dkt. 88) ("Plaintiff's Response – ebm's Motion to Compel"), attaching the Declaration [of Hugh C. Carlin] (Dkt. 88-1) ("Third Carlin Declaration"), with exhibits A though E (Dkts. 88-2 through 88-6) ("Plaintiff's Exh(s). __ - ebm's Motion to Compel").  Further, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendant Sager Electrical Supply Company, Inc., d/b/a Sager Electronic's Motions to Compel Production of Financial Records (Doc. 82) and to Compel Production of Mecent Communications (Doc. 83) (Dkt. 89) ("Plaintiff's Response – Sager's Motions to Compel"), the Declaration [of Kevin

---

[4] Plaintiff's Exhs. 22-36 (Dkts. 86-23 through 86-37) are filed under seal pursuant to a Confidentiality Stipulation and Order dated October 28, 2019 (Dkt. 31).

R. Lelonek] (Dkt. 89-1) ("Lelonek Declaration"), attaching exhibits A through E (Dkts. 89-2 through 89-6) ("Lelonek Dec. Exh(s). ___").

On July 26, 2021, Sager filed the Reply in Support of Defendant's Motion for Leave to File Defendant's Second Amended Answer, Affirmative Defenses, and Counterclaim (Dkt. 93) ("Sager's Reply – Amend").  On July 29, 2021, Sager filed the Consolidated Reply in Support of Defendant's (1) Motion to Compel Production of Financial Records and (2) Motion to Compel Production of Mecent Communications (Dkt. 94) ("Sager's Reply – Motions to Compel"), attaching the Declaration of Elizabeth A. Cuneo in Support of Defendant's Motions to Compel (Dkt. 94-1) ("Third Cuneo Declaration"), with Exhibit A (Dkt. 94-2) ("Third Cuneo Declaration Exh. A").  On July 30, 2021, Defendants filed the Reply to Plaintiff's Opposition to Defendants' Motion to Preclude Plaintiff's Expert Witness(es) (Dkt. 96) ("Defendants' Reply – Motion to Preclude"), attaching the Affidavit of Jennifer A. Pedevillano (Dkt. 96-1) ("Pedevillano Affidavit"), with exhibits A-I (Dkt. 96-2) ("Defendants' Reply Exh(s). ___").

On August 2, 2021, ebm filed the Reply to Motion to Compel (Dkt. 97) ("ebm's Reply – Motion to Compel").  Also filed on August 2, 2021 by Sager was Defendant's Opposition to Plaintiff's Motion for Leave to Amend the Complaint and to Extend the Scheduling Order (Dkt. 98) ("Sager's Response – Amend"), attaching the Declaration of Bill Warren in Support of Defendant's Opposition to Plaintiff's Motion for Leave to Amend the Complaint and to Extend the Scheduling Order (Dkt. 98-1) ("Second Warren Declaration"), with exhibits A through N (Dkts. 98-2 through 98-15) ("Second Warren Dec. Exh(s). ___").  On August 4, 2021, ebm filed Defendant's Opposition to Plaintiff's Motion for Leave to Amend the Complaint and to Extend the Scheduling Order (Dkt. 99)

("ebm's Response – Amend"), the Affidavit of Joseph G. Fortner, Jr. (Dkt. 100) ("Third Fortner Affidavit") with exhibits A through D (Dkts. 100-1 through 100-4) ("Third Fortner Affidavit Exh(s). __").  On August 16, 2021, Plaintiff filed the Reply Declaration [of Hugh C. Carlin] (Dkt. 101) ("Fourth Carlin Declaration"), attaching exhibits 1 through 20 (Dkts. 101-1 through 101-20 ("Fourth Carlin Dec. Exh(s). __"), and Plaintiff's Memorandum of Law in Further Support of Plaintiff's Motion for Leave to Amend the Complaint and to Extend the Scheduling Order (Dkt. 101-21) ("Plaintiff's Reply - Amend").

Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion filed July 13, 2021, for leave to file a second amended complaint and to extend the scheduling order is GRANTED; Defendants' respective motions for judgment on the pleadings are DISMISSED as moot without prejudice; Defendant Sager's motion for leave to file a second amended complaint is DISMISSED as moot; Defendants' joint motion to preclude Plaintiff's expert witnesses is DENIED; Defendant ebm's motion to compel production of tangible things and information is GRANTED and Plaintiff is ORDERED to show cause why ebm should not be awarded expenses, including attorney fees incurred in connection with making the motion; Defendant Sager's motions filed June 18, 2021 to compel production of financial records and to compel production of Mecent communications are DISMISSED as moot except for Sager's request for expenses and attorney fees Sager incurred in connection with the motion for which Plaintiff is ORDERED to show cause why Sager should not be awarded such fees.

**FACTS**[5]

Plaintiff Austin Air Systems, Limited ("Plaintiff" or "Austin Air"), is a New York corporation in the business of manufacturing residential air purifiers which are sold world-wide in more than 100 countries.  In 2003, Plaintiff began selling in China two models of its air purifiers, a "standard" model and a "junior" model, generating in excess of $ 8 million dollars in revenue from its China sales alone in 2014.  In 2015, however, the Chinese government amended its regulations pertaining to air flow/decibel level standards for air purifiers sold in China ("the revised standards").  Because Plaintiff's air purifiers did not comply with the revised standards, Plaintiff was no longer permitted to sell its air purifiers in China.  Between 2015 and 2016, Plaintiff spent $ 560,000 to design the new "Elite" model air purifier that would meet the revised Chinese standards, and to retrofit Plaintiff's manufacturing facility to manufacture the Elite model air purifier, but the Elite model air purifiers did not feature the same "traditional aesthetic look" for which Plaintiff's air purifiers were known, Amended Complaint ¶ 13, leading Plaintiff to continue exploring how best to reengineer its air purifiers to be sold in China.

To assist with the reengineering of its air purifiers, Plaintiff worked with Defendant Sager Electrical Supply Company, Inc. ("Sager"), a Massachusetts corporation engaged in the distribution and selling of machine parts and accessories including, as relevant here, fan motor assemblies designed and manufactured by Defendant ebm-papst Inc. ("ebm"), a Connecticut corporation engaged in the designing and manufacturing of machine parts and accessories including, *inter alia*, fan motor assemblies.  In July 2016, Plaintiff and Defendants met and agreed that Defendants

---

[5] Taken from the pleadings and motion papers filed in this action.

would design and engineer the "Classic Standard" and "Classic Junior" model air purifiers that would meet or exceed the revised China air flow/decibel level standards and, if successful, Defendants would supply Plaintiff with an unspecified quantity of the reengineered fan motor assemblies ("reengineered fan motor assemblies" or "fan motor assemblies") for use in Plaintiff's Classic Standard and Classic Junior model air purifiers ("air purifiers" or "units").  In October 2016, Defendants informed Plaintiff they had successfully engineered, designed and tested a fan motor assembly that Defendants believed could be incorporated into the Classic Standard model air purifier and meet or exceed the revised standards.  In December 2016, Defendants provided Plaintiff with a prototype of the Classic Standard model air purifier ("the prototype"), advising air purifiers manufactured in accordance with the prototype would comply with the revised standards for air flow and decibel levels.

In January 2017, Defendants advised Plaintiff they had successfully engineered, designed and tested a Classic Standard model air purifier incorporating the reengineered fan motor assembly for which the air flow and decibel level complied with the revised standards.  The Classic Standard model used a 225 millimeter-sized fan motor assembly ("225 mm fan" or "standard fan").  In March 2017, one Michael Domon ("Domon") of Austin Air approved the 225 mm fan design and submitted a purchase order for 3,045 standard fans.  In April 2017, Defendants similarly advised Plaintiff Defendants had successfully engineered, designed and tested a Classic Junior model air purifier incorporating the reengineered fan motor assembly that complied with the revised standards.  The Classic Junior model used a 190 millimeter-sized fan motor assembly ("190 mm fan" or "junior fan").  In April 2017, Defendants provided Plaintiff

with a final drawing of the fan motor assembly for use in Plaintiff's Classic Standard and Junior model air purifiers ("the drawing") which, when incorporated into the Classic Standard and Junior model air purifiers, were expected to comply with the revised standards.  In June 2017, Domon approved the 190 mm fan.  On June 20, 2017, Plaintiff submitted a purchase order for 12,480 units of the junior fans, Dkt. 39-2, and on June 23, 2017, submitted another purchase order for 7560 units of the standard fans Dkt. 39-3.  In June 2017, Plaintiff was informed by its Chinese distributor Austin Mecent ("Mecent"), that the prototype air purifiers into which the junior and standard fans designed and manufactured by ebm "just barely met the Chinese air flow/decibel level standards," Amended Complaint ¶ 23, and Plaintiff then informed Defendants of the need to "ensure consistency" to avoid any "variation" from the Chinese revised standards for air flow/decibel levels.  *Id*.  On June 27, 2017, Austin Air Vice President Lauren McMillan ("McMillan"), shared with Sager sales representative Allen Koscielny ("Koscielny") that Mecent advised the prototypes met the revised standards.  Plaintiff retrofitted its manufacturing facility to manufacture both Classic Standard and Classic Junior model air purifiers in accordance with the plans, specifications, the drawing, and the prototype junior and standard fans in conjunction with Defendants' reengineered fan motor assemblies.  On July 11, 2017, McMillan signed a "Non-Cancelable/Non Returnable Customer Agreement" (the NC/NR agreement"), with Sager, applicable to the purchase orders Plaintiff placed in June 2017, stating "[a]ll NC/NR orders cannot be cancelled or returned to Sager . . . ."  Dkt. 39-4 at 2.  Sager maintains the NC/NR agreement was required because the 225 mm and 190 mm fans were non-standard catalog items for which it was unlikely there would be other customers.  In total, Plaintiff

ordered 12,480 of the 190 mm Classic Junior fans at a unit price of $ 50.87, and 7,560 of the 225 Classic Standard mm fans, at a unit price of $ 67.00, for an order in the amount of $ 1,141,377.60.  Dkt. 39-4.

In August 2017, Sager commenced shipping the fan motor assemblies to Plaintiff in accordance with the purchase orders.  Plaintiff, over several months, accepted from Sager fan motor assemblies worth several hundred thousand dollars for which Sager sent Plaintiff invoices, with Plaintiff paying some, but not all of the invoices.  Through the summer of 2017, Sager purchased from ebm fan motor assemblies for both the Classic Standard and Classic Junior model air purifiers, worth more than $ 573,000, for shipment to Plaintiff for distribution in China.  In October 2017, Mecent advised Plaintiff that the Classic Standard and Classic Junior model air purifiers, engineered and designed by Defendants and incorporating the fan motor assemblies, did not, in fact, meet China's revised standards for air flow/decibel levels.  Plaintiff maintains that not only is it unable to distribute the Classic Standard and Classic Junior model air purifiers in China, but also that Plaintiff's reputation has been damaged which has harmed Plaintiff's ability to distribute its air purifiers in other countries as well.

## **DISCUSSION**

## 1.   **Motion to for Leave to Amend**

Plaintiff moves for leave to file a second amended complaint and to reset the deadline for disclosing Plaintiff's expert witnesses, arguing Plaintiff's request for such relief arises from "Plaintiff's recent discovery of the extent and nature of the deception practiced by Defendant[s] . . . and ebm's failure to timely respond to Plaintiff's discovery demands."  Plaintiff's Memorandum – Amend at 1.  In particular, Plaintiff maintains that

it was not until June 22, 2021, when Plaintiff deposed ebm's witness Duane Paul

("Paul") that Plaintiff learned the equipment and software ebm used when testing the

reengineered standard and junior fan motor assemblies for use in Plaintiff's air purifiers

automatically generated data and test reports which Defendants had not previously

produced to Plaintiff in response to Plaintiff's discovery requests.  *Id*. at 1-5.  Although

the information was turned over to Plaintiff on June 23, 2021, after Plaintiff learned of its

existence while deposing Paul on June 22, 2021, Plaintiff maintains it did not have

enough time to review the information prior to June 24, 2021, when Plaintiff deposed

Gregory Ford ("Ford"), the ebm applications engineer who supervised the testing of the

fan motor assemblies.  *Id*.  According to Plaintiff, it was not until the test data was

produced on June 23, 2021 that Plaintiff learned Defendants tested the fan motor

assemblies by operating them at an electrical frequency of 60 hertz[6] and not at the 50

hertz electrical frequency at which the fan motor assemblies would be operated in

China.  *Id*.  In opposition to Plaintiff's Motion to Amend seeking leave to file a second

amended complaint ("SAC"), Sager argues that throughout this litigation, Plaintiff has

been dilatory, Sager's Response – Amend at 3-6, that Plaintiff's proposed second

amended complaint ("Proposed SAC") is demonstrably false insofar as it alleges

Defendants engaged in "collusion" and "deception" which establishes the motion is futile

and made in bad faith, *id*. at 7-13, Plaintiff has failed to explain why it did not pursue

more depositions or expert discovery prior to the deadlines established by the court's

scheduling orders, *id*. at 13-15, and Sager would "suffer undue prejudice" if the motion

---

[6] Hertz or "Hz" is the measure of frequency in electrical currents with frequency being the rate at which current changes direction per second.  One complete wave of alternating electrical current or voltage is a cycle, and one hertz is equal to one cycle per second.

is granted.  *Id*. at 15-16.  In its opposition to the motion, ebm argues Plaintiff has not

and cannot establish good cause for moving to file a further amended complaint or to

extend the cutoff for expert discovery, ebm's Response – Amend at 7-10, the Proposed

SAC is futile, *id*. at 11-13, and Plaintiff has not shown the requisite good cause for

extending the time for amendment which would result in prejudice to Defendants.  *Id*. at

14-16.  In further support of Plaintiff's Motion to Amend, Plaintiff argues there exists

good cause to amend, Plaintiff's Reply – Amend at 3-6, the Proposed SAC is not futile,

*id*. at 6-9, and Defendants have not demonstrated sufficient prejudice to deny the

motion.  *Id*. at 9-10.

## A.    Amended Pleadings

The Proposed SAC contains seven claims for relief including (1) breach of

contract against Sager; (2) breach of implied warranty of fitness against Sager; (3) fraud

against ebm and Sager; (4) breach of contract against ebm; (5) declaratory judgment

that Plaintiff does not owe Sager any money for the alleged non-compliant fan motor

assemblies; (6) negligent misrepresentations against ebm and Sager; and (7) false

representations against ebm and Sager.  Generally, a motion to amend pleadings is

governed by Fed.R.Civ.P. 15 ("Rule 15 __"), which, as relevant, provides "[t]he court

should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).  *See Foman v.*

*Davis*, 371 U.S. 178, 181 (1962) (leave to file an amended complaint "shall be freely

given when justice so requires.").  Motions for leave to amend, however, "should

generally be denied in instances of futility, undue delay, bad faith or dilatory motive,

repeated failure to cure deficiencies by amendments previously allowed, or undue

prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d

122, 126 (2d Cir. 2008) (citing *Foman*, 371 U.S. at 182).  Moreover, where, as here, "a motion for leave to amend is brought after the time for making such motions set forth in the district court scheduling order passes, [ ] Fed.R.Civ.P. 16(b) governs."  *See Lowry v. Eastman Kodak Co.*, 14 Fed.Appx. 27, at *2 (2d Cir. 2001) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000)).  Because the relevant scheduling order (Dkt. 38) provided no further amendments unless the "good cause" requirement of Rule 16(b)(4) was met, Plaintiff is first required to establish good cause for seeking leave to file the SAC.  *See Sacerdote v. New York University*, 9 F.4th 95, 115-16 (2d Cir. 2021) (holding when scheduling order sets deadline after which all amendments are prohibited, Fed.R.Civ.P. 16(b)(4)'s "good cause" requirement for amendment applies). Accordingly, Plaintiff must establish pursuant to Rule 16(b)(4) good cause to amend the scheduling order to permit the filing of the SAC before the court considers whether the motion comports with Rule 15(a)'s requirements.  *See Grochowski v. Phoenix Construction,* 318 F.3d 80, 86 (2d Cir.2003) (although a motion to amend a complaint brought pursuant to Fed.R.Civ.P. 15(a) provides that leave to file an amended complaint "shall be freely given," this "lenient" standard "must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" (quoting Fed.R.Civ.P. 15(a) and 16(b))).

### 1.    Rule 16 Good Cause

Where, as here, the deadline set by a court's scheduling order for amending a pleading has expired, "[i]t is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only upon a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)," *Sacerdote*, 9 F.4th at 115

(citing Fed. R. Civ. P. 16(b)(4) ("Rule 16(b)(4)")), which provides "[a] schedule may be modified only for good cause and with the judge's consent."  The purpose of "Rule 16(b), in allowing modifications of scheduling orders only for good cause, provides the district courts discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007).  To establish the requisite "good cause" for amending a scheduling order, the party seeking amendment must demonstrate that the deadline cannot be met "despite the diligence of the party seeking the extension."  Fed.R.Civ.P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)).  "A finding of good cause depends on the diligence of the moving party." *Grochowski,* 318 F.3d at 86 (citing *Parker v. Columbia Pictures Industries,* 204 F.3d 326, 340–41 (2d Cir.2000) (refusing to find good cause for late notice to amend where pleadings established plaintiff was in possession of the information necessary to assert new claim prior to expiration of scheduling order's deadline for motions to amend)).  Accordingly, where the court determines that the deadline cannot be met, despite the diligence of the party seeking the extension, the moving party has demonstrated good cause and the motion to amend the scheduling order and extend deadlines may be granted.  *Parker,* 204 F.3d at 340.  In the instant case, the court finds the requisite good cause to permit Plaintiff to file the SAC.

As relevant here, Plaintiff attributes seeking leave now to further amend the Complaint to Plaintiff's recent discovery of the extent and nature of Defendants' alleged deceptive practices as well as ebm's belated responses to Plaintiff's discovery demands, Plaintiff's Memorandum – Amend at 1-4, and delays in scheduling certain

depositions of Defendant ebm's employees in possession of information essential to Plaintiff's identifying its own expert witnesses.  *Id*. at 13-15.  Defendant Sager argues Plaintiff cannot establish good cause because Plaintiff has been "dilatory" in litigating this action, which precludes finding good cause to extend deadlines.  Sager's Response – Amend at 3-6.  Defendant ebm argues Plaintiff cannot establish good cause because Plaintiff was aware of the asserted "newly discovered" facts on which the Motion to Amend is based, ebm Response – Amend at 7-9, asserts Plaintiff's Motion to Amend the complaint and extend the scheduling order is a "red herring" given the air purifiers, when tested, presumably at 50 Hz, in China in June 2017, were found to meet the revised standards, *id*. at 9-10, and Plaintiff fails to provide any basis for not seeking to depose before the established deposition deadline ebm witnesses George Riker ("Riker") and Jon Miller ("Miller").  *Id*. at 10.  In further support of its good cause argument, Plaintiff reiterates ebm did not disclose until June 23, 2021, critical documents demonstrating the operating air flow and decibel level issues with the fan motor assemblies purchased by Plaintiff were attributed to a discrepancy in the electrical current ebm used to test the fan motor assemblies, *i.e.*, at 60 Hz, and the standard electrical current used in China, *i.e.*, 50 Hz, a fact ebm does not deny, and which the deposition testimony of ebm employees Ford and Marco Latina ("Latina") establishes is critical to Plaintiff's claims. Plaintiff's Reply – Amend at 3-6.

Here, with regard to diligence, although Sager maintains that since commencing this action, Plaintiff has been dilatory in litigating this action, Sager's Response – Amend at 3-6, a closer examination of the proceedings, as reflected by the docket and other motion papers filed in this action, establishes otherwise.  Specifically, on October

5, 2020, more than 17 months after this action was commenced on May 1, 2019, the parties filed a joint motion (Dkt. 36) seeking to modify the deadlines in the initial Scheduling Order filed August 27, 2019 (Dkt. 19), explaining that although the parties had initiated discovery by negotiating and agreeing to discovery protocols, propounding discovery requests, serving discovery responses and objections, and initial document productions, "these activities were derailed by the COVID-19 outbreak and the ensuing state-wide lockdown in New York." Dkt. 19 at 1-2. The parties continue that the pandemic caused "significant interruption" with regular business activities interrupted for Plaintiff, as well as for counsel for Plaintiff and Defendants. *Id*. at 2. Among the new deadlines proposed by the parties was April 19, 2021 for discovery completion. *Id*. Between January 19 and February 5, 2021, ebm produced its responses to Plaintiff's First Discovery requests in three tranches including more than 15,000 pages on January 19, 2021 ("first tranche"), more than 25,000 pages on January 30, 2021 ("second tranche"), and more than 7,000 pages on February 5, 2021 ("third tranche"). ebm Response – Amend at 3. On February 1, 2021, between receipt of the second and third tranches of discovery responses, Plaintiff moved to extend the deadline for discovery for an additional 120 days (Dkt. 56), asserting the late production of documents had prevented Plaintiff from noticing and scheduling depositions, and that Plaintiff's production of its own expert witness reports was dependent on receipt of responses to all of Plaintiff's outstanding discovery requests. Dkt. 56-9 at 4. On February 11, 2021, Plaintiff's motion to extend the deadline for discovery was granted with discovery to be completed by July 19, 2021. Dkt. 65. On February 26, 2021, Plaintiff's counsel, Hugh C. Carlin, Esq. ("Carlin"), first appeared, Dkt. 67, with Plaintiff

moving on March 2, 2021 to substitute Carlin as counsel, Dkt. 69, and the motion was granted on March 3, 2021.  Dkt. 70.

Thereafter, it was while deposing ebm witness Duane Paul ("Paul") on June 22, 2021 that Plaintiff discovered that the equipment and software ebm used to test the air purifiers and fan motor assemblies in January 2017, December 2017, and January 2018, which testing automatically generated data and reports regarding the difference in air flow and decibel levels when the fan motor assemblies were operated at 60 Hz and 50 Hz ("the 50/60 Hz discrepancy"), and with which Plaintiff had not been provided. Plaintiff's Memorandum – Amend at 1.  On June 23, 2021, ebm turned over to Plaintiff such test data and reports, which revealed ebm never achieved the airflow and decibel levels meeting the revised standards when the air purifiers and fan motor assemblies for both standard and junior models were operated using electrical current of 50 Hz, the standard electrical current used in China, as compared to 60 Hz, the standard electrical current used in the United States.  *Id.* at 1-2.  It was not until deposing ebm witness Ford on June 24, 2021, that Plaintiff came to understand that ebm's report that the fan motor assemblies met the revised standards was based on testing using an electrical current of 60 Hz, rather than 50 Hz as is standard in China.  *Id.* at 2-5.  Plaintiff relies on this belatedly discovered information in support of the motion for leave to file the SAC clarifying factual allegations in the Amended Complaint consistent with the new information pertaining to the 50/60 Hz discrepancy and asserting new claims.  *Id.* at 9-13.  Moreover, although ebm maintains it provided Plaintiff with several pages of e-mails advising ebm tested the fan motor assemblies using electrical current of 60 Hz, a review of such documents reveals they do not refer to different electrical currents causing the

fan motor assemblies to not meet the revised standards for noise level and air flow;
rather, in an August 24, 2017 e-mail from Ford to Domon, Dkt. 96-2 at 17, Ford
attributes the difference in wattage to testing at 60 Hz rather than 50 Hz, but does not
mention any effect on resulting noise level or air flow, and does not address that the e-
mail was sent seven weeks before Plaintiff was first advised that the fan motor
assemblies sent to its China distributor did not comply with the revised standards for
noise level and air flow.  *See* Dkt. 96-2 at 23-25 (e-mails between Plaintiff, Sager and
ebm discussing Plaintiff's receipt of notice from its China distributor that the fan motor
assemblies received for distribution were not meeting the revised standards).  The court
finds under these circumstances, Plaintiff did not fail to act with diligence in litigating the
action and good cause exists supporting Plaintiff's filing of the SAC.

Having found good cause to amend the scheduling order for filing the SAC, the
court next addresses whether the filing of the SAC comports with Rule 15.

## 2.    Rule 15 Amendment of Pleadings

Defendants alternatively argue against allowing Plaintiff to file the SAC because
the Proposed SAC is futile, Sager's Response – Amend at 7-13; ebm's Response –
Amend at 11-13, and its filing would result in prejudice to Defendants.  Sager's
Response – Amend at 15-16; ebm's Response – Amend at 14-16.  Plaintiff disputes the
Proposed SAC is futile, Plaintiff's Reply – Amend at 6-9, and maintains Defendants
have not demonstrated the filing of the SAC will result in sufficient prejudice to deny the
motion.  *Id*. at 9-10.

Even where good cause exists to amend the scheduling order to permit filing an
amended pleadings, if a requested pleading amendment is futile, "it is not an abuse of

discretion to deny leave to amend" to the moving party. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). *See also Kodak Graphic Communications Canada Co. v. E.I. DuPont de Nemours and Company,* 2011 WL 6826650, at * * 4–5 (W.D.N.Y. Dec. 28, 2011) (denying under Rule 16(b) motion to file amended complaint for failure to establish good cause for, and futility of proposed amendment).  "An amendment to a pleading is futile if it could not withstand a motion to dismiss under Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  *See El-Shabazz v. State of New York Committee on Character and Fitness for the Second Judicial Department*, 428 Fed.Appx. 95, at *1 (July 5, 2011) ("'When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted.'")(quoting *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)).  *See also Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999) (An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.").  As such, a determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6). *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* 160 F.Supp.2d 657, 666 (S.D.N.Y.2001).

In ruling on a motion under Rule 12(b)(6), and, thus, in considering the plausibility of a proposed amended pleading, the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  Further, it is

well settled that in determining whether a proposed amended complaint is futile, the court must assume the truth of the specific allegations set forth therein.  *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  The court thus addresses in turn each of the claims in the Proposed SAC.

Both Sager and ebm, in arguing against the filing of the Proposed SAC because it is futile, focus on the allegations that Sager and ebm colluded with each other in misrepresenting that the fan motor assemblies met the revised standards noise level and airflow criteria, despite being aware of the 50/60 Hz discrepancy to which Plaintiff attributes the air purifiers later failing to meet the revised standards.  Sager Response – Amend at 7; ebm Response – Amend at 11-12.  Defendant ebm further argues the fraud claims fail to comply with the particularity requirements of Fed.R.Civ.P. 9(b) ("Rule 9(b)"), ebm Response – Amend at 12-13, and Defendant Sager also argues in support of futility that witness testimony confirms Sager acted merely as the distributor of the fan motor assemblies and had no role in the testing performed by ebm.  Sager's Response – Amend at 7-9.  Although Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed.R.Civ.P. 9(b), as Plaintiff argues, Plaintiff's Reply – Amend at 8, common law fraud under New York law may be premised not only on false statements, but also on material omissions of facts.  *Id*. (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)).  In particular, "[i]n an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material

omission, and injury." *Id*.  The parties do not dispute that New York law is applicable to the fraud claim.

Here, the Proposed SAC sufficiently alleges that Defendants failed to disclose that the January 2017 testing of the fan motor assemblies was performed at 60 Hz, rather than 50 Hz, which could ultimately be found to be a material omission of fact constituting Defendants' fraud inducing Plaintiff's acceptance of Defendants' test results.  Whether it is ultimately determined that the onus was on Plaintiff who ordered the fan motor assemblies, Sager who was the "middleman" responsible for finding a supplier of fan motor assemblies that met the revised standards criteria, or ebm as the engineer and manufacturer of the fan motor assemblies, to ensure the testing was performed using the standard electrical current used in China, or even if the air flow and decibel level discrepancies are attributed to some other factor, is not the question before the court on the current motions; rather, that it is plausible that Plaintiff may eventually prove it relied, in ordering fan motor assemblies for incorporation into air purifiers to be sold in China, on the accuracy of data generated by the testing of the fan motor assemblies using the standard electrical current for China, which Defendant knew or should have known would affect the results and possibly lead to the production of air purifiers that did not meet the revised standards and, as such, could not be distributed in China, at a loss to Plaintiff.  As applicable to Rule 12(b)(6), the allegations are sufficiently pleaded if plausible on their face.  *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) ("conclusory allegations are not entitled to the assumption of truth, and a complaint will not survive a motion to dismiss unless it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This argument of Defendants is thus without merit.

Defendant Sager also maintains the futility of Plaintiff's Proposed SAC is established by the fact that despite being aware of the 50/60 Hz discrepancy "no later than July 2017," Plaintiff purchased additional fan motor assemblies for distribution in China.  Sager's Response – Amend at 11-13.  In making this argument, however, Sager relies on a July 12, 2017 e-mail from one Timothy Talty ("Talty")[7] to Plaintiff's employees Domon and McMillan ("July 12, 2017 Talty e-mail")[8] advising Talty's testing of the 190 mm fan motor assembly using electrical current of 50 Hz did not meet the data Plaintiff provided, with the speed being "very close" but the wattage different. Second Warren Dec. Exh. H (Dkt. 98-9).  The record, however, does not explain that the discrepancy noted between Talty's testing and the data Plaintiff provided establishes Talty's test results indicated the fan motor assemblies did not comply with China's revised standards for air flow and decibel level.  Despite Plaintiff's assertion, Plaintiff's Reply – Amend at 5, that an increase in motor speed would result in increased noise, the record does not indicate what decibel level resulted from the increased, but "very close" speed.  Accordingly, as presented, there is no merit to this argument.

Defendant Sager further maintains Plaintiff relied on the assurance of Mecent, Plaintiff's China Distributor, who confirmed in June 2017 that the air purifiers with the fan motor assemblies passed testing in China which, presumably, in testing the air

---

[7] It is not clear from the record when or why Plaintiff requested Talty test the fan motor assemblies.
[8] Although the July 12, 2017 Talty e-mail is not attached to the pleadings, the court may also consider, *inter alia*, documents submitted by the moving party which are in the possession of the party opposing the motion.  *Prentice v. Apfel*, 11 F.Supp2d 420, 424 (S.D.N.Y. 1998) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

purifiers would have operated the units at China's electrical current standard of 50 Hz. Sager's Response – Amend at 9-11.  Plaintiff replies that the units tested in China in June 2017 were assembled with the prototype or sample fan motor assemblies, whereas the air purifiers that did not meet China's revised standards in October 2017 were production units using the fan motor assemblies manufactured by ebm and delivered by Sager to Plaintiff after the prototype air purifiers were sent to China for the testing which Mecent advised the units passed, albeit, barely.  Plaintiff's Reply – Amend at 8.  Plaintiff continues this argument ignores that in late 2017, Plaintiff informed Defendants of the reports that the air purifiers were failing to meet China's revised standards, and subsequent to which ebm, in December 2017 and January 2018, performed another series of tests on the fan motor assemblies bought and delivered to Plaintiff to determine why the units were failing the meet the revised standards, thereby confirming that Defendants did not consider the results of the prototype testing definitive.  *Id*. at 8-9.

As Plaintiff asserts, the air purifiers assembled with the fan motors that failed testing in China in October 2017 were production units rather than the prototypes which Mecent advised in June 2017 were tested in China and met the revised standards for air flow and decibel levels.  Accordingly, it is not implausible that the failure of the production units to meet the revised standards is attributable to ebm's production process, and does not support finding the proposed SAC is futile.

There thus is no merit to Defendants' arguments that Plaintff's motion to file the Proposed SAC should be denied because the claims contained therein are futile.  The court thus considers whether Defendants' arguments, Sager's Response – Amend at

15-16; ebm's Response – Amend at 14-16, that the filing of the SAC will result in undue prejudice to Defendants are persuasive.

As relevant here, a court may also deny leave to file amended pleadings where the amendments will result in prejudice to the defendants. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *accord Hernandez v. BMNY Contracting Corp.*, 2019 WL 418498 at *1 (S.D.N.Y. Jan. 17, 2019); *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016).  "'[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'"  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).  "'Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191, (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

In the instant case, Defendants fail to point to any serious prejudice to Defendants if discovery is reopened, perhaps on a limited basis, a possibility not discussed by the parties, to allow the matter to be determined based on a fully-developed record.  *See Lent v. Signature Truck Systems, Inc.*, 2009 WL 3305788, at * 3 (W.D.N.Y. Oct. 14, 2009) (permitting additional discovery "in the interest of justice" of having the matter determined on its merits).  As discussed, Discussion, *supra*, at 24-25, there are several possible reasons why the tests on the prototype air purifiers by ebm and in China showed the units met China's revised standards, yet later tests on the production units failed to replicate the same results, a fact that may ultimately be shown

as attributable to the 50/60 Hz discrepancy, a manufacturing problem, or something else.  It is significant that, as Plaintiff asserts, Plaintiff's Reply – Amend at 8-9, Defendants perceived the need to conduct further testing on the fan motor assemblies with regard to the 50/60 Hz discrepancy, and that such testing was conducted before the instant action was filed, strongly suggesting Defendants understood the 50/60 Hz discrepancy could have resulted in the inconsistency regarding whether the production fan motor assemblies in fact performed in compliance with China's revised standards. In any event, reopening discovery to permit the parties to determine who is responsible for the loss Plaintiff allegedly sustained as a result of Defendants' alleged unlawful actions cannot be considered an unfair surprise. and thus unduly prejudicial. and therefore does not support denying Plaintiff's Motion to Amend seeking leave to file the SAC.

The filing of Plaintiff's Proposed SAC will supplant the Amended Complaint, rendering it moot and a legal nullity.  *See Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977) (discussing the "well established [principle] that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").  As such, Defendants' respective motions for judgment on the pleadings (Dkts. 39 (Sager) and 41 (ebm)) are DISMISSED as moot and without prejudice.  Similarly, Sager's Motion to Amend (Dkt. 84) is DISMISSED as moot as Sager will be permitted to file an answer to the Proposed SAC.

### B.    Extending Deadline for Disclosing Expert Witnesses

Plaintiff's Motion to Amend also seeks to extend the deadline for disclosing expert witnesses, arguing it was not until Plaintiff deposed Paul on June 22, 2021, and

received ebm's supplemental disclosures containing the December 2017 and January 2018 test results that Plaintiff became aware of the significance of the 50/60 Hz discrepancy, about which Plaintiff questioned Ford at Ford's deposition on June 24, 2021.  Plaintiff's Memorandum – Amend at 1-4.  Plaintiff asserts the data and test results were provided by ebm on June 23, 2021 only because Plaintiff's June 22, 2021 deposition of Paul revealed the equipment and software ebm used to test the fan motor assemblies automatically generated such data.  *Id.* at 1-2.  Plaintiff further maintains Defendants failed to cooperate in Plaintiff's attempt to schedule depositions with Defendants refusing to permit Plaintiff to conduct additional depositions of ebm's witnesses George Ricker ("Riker"), and Jon Miller ("Miller"), as well as Sager's witness Fred Wrubel ("Wrubel"), which depositions Plaintiff maintains are necessitated by the data and test results ebm did not disclose until June 23, 2021.  *Id.* at 3-4.  In opposing extending Plaintiff's time to disclose expert witnesses, Defendant Sager argues Plaintiff's need to extend such deadline is the consequence of Plaintiff's own strategic decisions including never retaining a technical expert or an expert on damages, waiting until June 22, 2021, *i.e.*, fewer than 30 days before the close of discovery to depose its first witness, and violating Local Rule 31's requirement that deposition notices be served at least 21 days before the anticipated deposition date.  Sager's Response – Amend at 13-15.  Defendant ebm argues extending the scheduling order to permit the additional discovery, including expert discovery, would require ebm engage responsive experts to address Plaintiff's new claims, resulting in prejudice to ebm.  ebm Response – Amend at 15-16.

Defendants' assertion they were unaware that Plaintiff would not be seeking expert disclosure is without merit; rather, in connection with an earlier motion to extend the time to complete discovery filed February 1, 2021 (Dkt, 56), Plaintiff explained that "[g]iven the nature of the facts at issue in this litigation, expert disclosure and written reports are dependent on the experts' review and analysis of the parties' document production, deposition testimony of key individuals involved in the design, engineering, and/or retrofitting of the subject air purifiers and the associated fan motor assemblies, and inspection and testing of the units."  Dkt. 56-9 at 6.  Plaintiff's perception of the need for its experts to review and analyze the information provided by Defendants in response to Plaintiff's discovery demands, which included the information produced on June 23, 2021, completely undermines Defendants' attempt to characterize Plaintiff's Motion to Amend as a "red herring" designed to avoid Plaintiff's failure to timely disclose expert discovery.  Further, the court rejects Defendants' argument that extending the deadline for discovery will result in prejudice for the same reasons the court rejects the assertions of prejudice asserted in connection with permitting Plaintiff to file the SAC. Discussion, *supra*, at 27-28.

Plaintiff's Motion to Amend is also GRANTED with regard to extending the discovery deadline for both fact and expert discovery.  The parties shall propose jointly or individually to the Court a proposed amended scheduling order including dates for expert disclosure and depositions **within ten (10) days** of this Decision and Order.

**2.    Motions to Compel**

Both Defendants have moved to compel discovery.  Fed.R.Civ.P. 26 ("Rule 26__") provides that a party may discover "any matter, not privileged, that is relevant to

the claim or defense of any party . . . .  Relevant information need not be admissible at

trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence."  Fed.R.Civ.P. 26(b)(1).  Although not unlimited, relevance, for

purposes of discovery, is an extremely broad concept.  *A.I.A. Holdings S.A. v. Lehman*

*Bros.,* 2000 WL 763848, at *2 (S.D.N.Y. June 12, 2000) (quoting *Oppenheimer Fund,*

*Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).  Once "'any possibility' of relevance"

sufficient to warrant discovery is shown, the burden shifts to the party opposing

discovery to show the discovery is improper. *Id.* at *3.  Generally, discovery is only

limited when "'sought in bad faith, to harass or oppress the party subject to it, when it is

irrelevant,'" or to obtain privileged material.  *In re Six Grand Jury Witnesses,* 979 F.2d

939, 943 (2d Cir.1992)).

Where a party fails to provide requested discovery, Fed.R.Civ.P. 37 ("Rule 37

__") provides in pertinent part that "a party, upon reasonable notice to other parties and

all persons affected thereby, may apply for an order compelling disclosure or discovery"

by motion if the parties have conferred in good faith and the opposing party "fails to

make a disclosure required by Rule 26(a)."  Fed.R.Civ.P. 37(a).  "[E]vasive or

incomplete disclosure, answer, or response is to be treated as a failure to disclose."

Fed.R.Civ.P. 37(a)(3).  Further, where a party has failed to provide responses to

discovery, a party may be compelled by the court to do so and a party's failure to

comply will subject the recalcitrate party to sanctions including, *inter alia*, a moving

party's expenses in bringing the motion to compel pursuant to Fed.R.Civ.P. 37(a)(3).

*See* Fed.R.Civ.P. 37(a)(5) (providing that if a motion to compel discovery is granted,

"the court must, after giving an opportunity to be heard, require the party or deponent

whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

### A.    Sager's Motions

On June 18, 2021, Sager filed two motions to compel including a motion to compel production of Plaintiff's financial records including Plaintiff's income statement and balance sheet for fiscal year ending August 31, 2020, Sager's First Motion to Compel, and to compel production of Plaintiff's communications with its Chinese distributor Mecent, Sager's Second Motion to Compel (together, "Sager's Motions to Compel").  Plaintiff maintains Sager's Motions to Compel are moot because on June 22, 2021, Plaintiff produced the requested financial records, and on July 7, 2021, Plaintiff produced more than 1,600 pages of e-mails consisting of communications between Plaintiff and Mecent, Plaintiff's Response - Sager's Motions to Compel at 2-5, the receipt of which Sager does not deny.  Sager's Reply – Motions to Compel at 1.  Nor does Sager challenge such responses as incomplete or otherwise deficient.  As such, Sager's Motions to Compel are DISMISSED as moot, except for Sager's request for an award of costs incurred in connection with making the motions.

Relevantly, where, as here, responses to discovery requests are not made until after the requesting party moves to compel discovery, and an award of expenses would not in the circumstances be unjust, an award of the moving party's expenses including reasonable attorney fees is required. *See* Fed.R.Civ.P. 37(a)(5) ("If the motion is granted – *or if the disclosure or requested discovery is provided after the motion was filed* – the court *must*, after giving an opportunity to be heard, require the party . . .

whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.") (italics added).  Accordingly, that Plaintiff provided responses to Sager's outstanding discovery requests after Sager filed its First and Second Motions to Compel does not protect Plaintiff from a court order directing Plaintiff to pay Sager its attorney's fees incurred in connection with the First and Second Motions to Compel.

An award of expenses, including reasonable attorney's fees incurred by a party in connection with a successful motion to compel a party's discovery responses is required as a sanction under Rule 37(a)(3) unless failure of the responding party to provide discovery, *see* Fed.R.Civ.P. 37(a)(3), was substantially justified or, under the circumstances, an award would be unjust.  "A party's failure to provide discovery is substantially justified if a genuine dispute exists of if there is an objectively reasonable basis for the failure."  *Rosehoff, Ltd v. Truscott Terrace Holdings LLC*, 2016 WL 2640351, at *4 (W.D.N.Y. May 10, 2016) (citing *Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015) (citing caselaw)), "such as where a party believed caselaw supported its position," *Scott-Iverson v. Independent Health Association, Inc.*, 2016 WL 1458239, at *2 (W.D.N.Y. Apr. 14, 2016) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Maddow v. Proctor & Gamble Co. Inc.*, 107 F.3d 846, 853 (11th Cir. 1997))).  As the test for substantial justification is "determined by an 'objective standard of reasonableness and does not require that the party have acted in good faith,'" *Underdog Trucking, L.L.C. v. Verizon Services Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1998))), that a party

who fails to provide requested discovery believed it was acting in good faith is irrelevant. *See Scott-Iverson*, 2016 WL 1458239, at *3 (citing *Underdog Trucking, L.L.C.*, 273 F.R.D. at 377). "An award of attorneys fees may be unjust where the party's failure was based on factors beyond the party's control." *Scott-Iverson*, 2016 WL 1458239, at *3.

Accordingly, in the instant case, Plaintiff shall show cause **within twenty (20) days** of this Decision and Order why Defendant Sager's expenses, including reasonable attorney's fees, should be not awarded to Sager as required by Rule 37(a)(5)(A), after which Sager shall file any response **within ten (10) days**.  Oral argument shall be at the court's discretion.

### B.    ebm's Motion

In its motion to compel, ebm seeks a court order compelling Plaintiff to produce (1) four specimens of both models of the air purifiers which are the subject of this action, in sealed containers as originally shipped by Plaintiff; (2) twenty (20) filters manufactured or purchased for use in China of both models of the air purifiers which are the subject of this action in sealed containers; and (3) all "prototypes" Plaintiff claims it received from ebm; and to identify by name certain individuals with actual participation in or knowledge about events and facts relevant to this action, as well as an award of the costs of the motion including attorney's fees.  ebm's Memorandum – Motion to Compel at 2.  According to ebm, specimen of the air purifiers in the condition as manufactured by Plaintiff and shipped to China are "critical" for ebm to inspect for compliance with ebm's engineering specifications.  ebm's Memorandum – Motion to Compel at 4-7.  Specimen of the filters Plaintiff used with its air purifiers are necessary for inspection to discern whether the "significant variation in air flow" could be attributed

to the filters.  *Id.* at 7.  Defendant ebm also maintains that because it was contracted to design only the fan motor assemblies for use in Plaintiffs' air purifiers, ebm needs to inspect the prototype air purifiers Plaintiff shipped to China and for which Plaintiff's Chinese distributor, Mecent, after testing the prototypes, informed the results of such testing showed the prototypes "barely met" China's revised standards for noise and air flow.  *Id.*  8-9.  Further, ebm argues Plaintiff needs to identify "the actual individuals involved in various aspects of Austin Air's engineering, design, manufacturing, and other related work," instead only referring ebm to Domon and McMillan.  *Id.* at 9-10.  In response, Plaintiff asserts it provided ebm with the information necessary for ebm to order and obtain on its own specimen of the air purifiers and filter, Plaintiff's Response – ebm's Motion to Compel at 2-3, that Plaintiff has advised ebm Plaintiff does not have possession of the prototype air purifiers which Plaintiff believes were returned to ebm, *id.* at 3, and Plaintiff has identified all the persons with actual participation or knowledge of facts relevant to this litigation.  *Id.*  In further support of its motion, ebm argues there is no legal precedent requiring ebm to purchase at retail the air purifiers and filters for examination and inspection, ebm's Reply – Motion to Compel at 2-4, and denies Plaintiff ever provided ebm with any prototype of the air purifier, asserting Plaintiff's denial that it is in possession of the prototypes calls into question whether Plaintiff destroyed or otherwise failed to preserve them for use in this action.  *Id.* at 4-5.  Further, ebm maintains that although Plaintiff initially agreed to identify specific individuals who were actually involved in and responsible for the development and production of the products at issue, Plaintiff has since failed to provide such information, asserting ebm should be able to determine from the depositions the identities of such persons.  *Id.* at 5-6.

Plaintiff does not object to any of the tangible things or information ebm seeks as irrelevant or unduly burdensome, nor would such argument be plausible in light of the nature of this action.  Further, the requested discovery of products that Plaintiff alleges ebm manufactured in a manner that does not comply with representations ebm allegedly made goes to the essence of this action.  Nor does Plaintiff reference any caselaw supporting its novel argument that ebm could purchase specimen of the air purifiers and filters for inspection at retail or that ebm should have relied on its own deposition practice to learn the identity of all individuals involved in the design, engineering, and manufacture of the air purifiers and filters, and the court's research reveals none.  Moreover, Plaintiff's bald assertion that it had the prototype air filters returned to ebm, without more, raises questions of possible spoliation, whether intentional or accidental, but is even more unpersuasive given Plaintiff alleges only that ebm provided the fan motor assemblies used in the air purifiers, which were manufactured by Plaintiff, such that even if Plaintiff provided the prototype air purifiers to ebm, its delivery to ebm would not qualify as a "return."

Defendant ebm's requests are obviously necessitated to enable ebm to oppose Plaintiff's claims of breach of contract, fraud, and misrepresentation, as well as the request for substantial damages, alleged by Plaintiff as $ 50 million, based on Plaintiff's alleged loss of earnings and damage to its reputation.  Accordingly, the court finds Plaintiff is in default of Plaintiff's outstanding obligations to provide the tangible things and information pursuant to ebm's discovery demands and Plaintiff is ORDERED to provide such responses **within ten (10) days** of this Decision and Order.  Furthermore, Plaintiff shall show cause **within twenty (20) days** of this Decision and Order why

Defendant ebm's expenses, including reasonable attorney's fees, should be not awarded to ebm as required by Rule 37(a)(5)(A), after which ebm shall file any response **within ten (10) days**.  Oral argument shall be at the court's discretion.

## <u>CONCLUSION</u>

Based on the following, Plaintiff's motion filed July 13, 2021, for leave to file a second amended complaint and to extend the scheduling order (Dkt. 86) is GRANTED; the parties shall propose jointly or individually to the Court a proposed amended scheduling order including dates for expert disclosure and depositions **within ten (10) days** of this Decision and Order; Defendants' respective motions for judgment on the pleadings (Dkts. 39 (Sager) and 41 (ebm)) are DISMISSED as moot and without prejudice; Defendant Sager's motion for leave to file a second amended complaint (Dkt. 84) is DISMISSED as moot; Defendants' joint motion to preclude Plaintiff's expert witnesses (Dkt. 75) is DENIED; Defendant ebm's motion to compel production of tangible things and information (Dkt. 79) is GRANTED and Plaintiff is ORDERED to show cause why ebm should not be awarded costs, including attorney fees incurred in connection with making the motion **within twenty (20) days** of this Decision and Order, after which ebm shall file any response **within ten (10) days**; Defendant Sager's motions filed June 18, 2021 to compel production of financial records (Dkt. 82) and to compel production of Mecent communications (Dkt. 83) are DISMISSED as moot except for Sager's request for costs and attorney fees Sager incurred in connection with the motion for which Plaintiff is ORDERED to show cause why Sager should not be awarded such fees **within twenty (20) days** of this Decision and Order, after which

ebm shall file any response **within ten (10) days**.  Oral argument regarding the awards

of costs and attorney's fees shall be at the court's discretion.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       February 15th, 2022
             Buffalo, New York