UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AUSTIN AIR SYSTEMS, LIMITED,                         REPORT
                                                       and
                              Plaintiff,            RECOMMENDATION
                  v.                               ----------------------------
                                                      DECISION
SAGER ELECTRICAL SUPPLY COMPANY, INC.,                  and
  also known as Sager Electronics,                     ORDER
  and ebm-papst Inc.,
                                                   19-CV-562JLS(F)
                              Defendants.

_____

SAGER ELECTRICAL SUPPLY COMPANY, INC.,
  also known as Sager Electronic,

                              Counter Claimant,
                  v.

AUSTIN AIR SYSTEMS, LIMITED,

                              Counter Defendant.

_____

APPEARANCES:        GROSS SHUMAN P.C.
                    Attorneys for Plaintiff and Counter Defendant
                    HUGH C. CARLIN and
                    KEVIN R. LELONEK, of Counsel
                    465 Main Street
                    Suite 600
                    Buffalo, New York  14203

                    PHILLIPS LYTLE LLP
                    Attorneys for Defendant Sager Electronics
                    ERIN C. BOREK and
                    WILLIAM D. CHRIST, of Counsel
                    One Canalside
                    125 Main Street
                    Buffalo, New York  14203-2887

KELLY HART & HALLMAN LLP
Attorneys for Defendant and Counter Claimant
 Sager Electrical Supply Company, Inc.
ELIZABETH A. CUNEO and
WILLIAM N. WARREN, of Counsel
201 Main Street
Suite 2500
Fort Worth, Texas  76102

HALLORAN & SAGE LLP
Attorneys for Defendant ebm-papst
JENNIFER A. PEDEVILLANO, and
JOSEPH G. FORTNER, JR.
One Goodwin Square
225 Asylum Street
Hartford, Connecticut  06103-4304

## JURISDICTION

On May 30, 2019, this case was referred to United States Magistrate Judge

Hugh B. Scott by Honorable Lawrence J. Vilardo[1] for all pretrial matters including

preparation of a report and recommendation on dispositive motions.  By Text Order

entered March 5, 2021 (Dkt. 71) the Clerk of Court reassigned the case referral to the

undersigned.  The matter is presently before the court on Defendant ebm's motion (Dkt.

115) filed Match 10, 2022 for sanctions, Plaintiff's motion (Dkt. 121) filed March 17,

2022 for reconsideration of the court's Decision and Order filed February 15, 2022 (Dkt.

107), and Plaintiff's motion (Dkt. 131) filed July 8, 2022 to compel discovery.

## BACKGROUND

Plaintiff Austin Air Systems, Limited ("Plaintiff"), is a manufacturer of air purifiers

globally sold including in China.  Defendant Sager Electrical Supply Company, Inc.

---

[1] On February 18, 2020, the matter was reassigned to Hon. John L. Sinatra, Jr. (Dkt. 35).

("Sager") is a Massachusetts corporation that distributes and sells machine parts and accessories including, as relevant to the instant case, fan motor assemblies used in air purifiers.  Defendant ebm-papst Inc. ("ebm") is a Connecticut corporation that designs and manufactures machine parts and accessories including, *inter alia*, fan motor assemblies used in air purifiers.  At issue in this action is whether Sager and ebm (together, "Defendants"), breached a contract to design, manufacture, and supply Plaintiff with fan motor assemblies for use in residential air purifiers manufactured and sold by Plaintiff globally, including in China where the fan motors are required to meet strict air flow and noise level standards.

On March 18, 2019, Plaintiff commenced this breach of contract and fraud action by filing the complaint (Dkt. 1-2) in New York State Supreme Court, Erie County.  On May 1, 2019, Sager, then the sole defendant having accepted service of process on April 15, 2019, removed the action to this court asserting diversity of citizenship as the jurisdictional basis.  After obtaining an extension of the deadline for joining parties and amending pleadings, Plaintiff, on October 7, 2019, Plaintiff filed the First Amended Complaint (Dkt. 25) ("FAC"), naming Sager and ebm as Defendants.  In a Decision and Order filed February 15, 2022 (Dkt. 107) ("D&O"), the undersigned, *inter alia*, granted Plaintiff's motion for leave to file a second amended complaint (Dkt. 86), and granted Defendant ebm's motion to compel production of tangible things including, as relevant to this action and the instant motions, the prototype air purifiers, into which redesigned fan motor assemblies manufactured by ebm were incorporated, and which Plaintiff had provided to its Chinese distributor for testing to assure compliance with China's revised

performance standards for air purifiers.  (Dkt. 79) ("emb's Motion to Compel").  On February 25, 2022, Plaintiff filed the Second Amended Complaint (Dkt. 112) ("SAC").

On March 10, 2022, Defendant ebm filed a motion for sanctions pursuant to Fed.R.Civ.P. 37(b) ("ebm's Motion"), supported by the Memorandum of Law in Support of Defendant's Motion for Sanctions and Opposition to Plaintiff's Motion to Extend Time to Comply with Court's Order Decision and Order Dated February 15, 2022 (Dkt. 115-1) ("ebm's Memorandum"), and attaching exhibit 1 (Dkt. 115-2) ("ebm's Exh. 1").  On March 17, 2022, Plaintiff filed a motion pursuant to Fed.R.Civ.P. 60(b) seeking reconsideration of the D&O insofar as the undersigned ordered Plaintiff to produce to ebm the prototype air purifiers that are the subject of this action and which were originally shipped by Plaintiff in sealed containers to Plaintiff's distributor in China (Dkt. 121) ("Plaintiff's Reconsideration Motion"), supported by the Declaration of Kevin R. Lelonek, Esq. (Dkt. 121-1) ("First Lelonek Declaration"), attaching exhibits A and B (Dkts. 121-2 and 121-3) ("First Lelonek Declaration Exh(s). __"), the Declaration of Lauren M. McMillan (Dkt. 121-4) ("McMillan Declaration"), attaching exhibits A through C (Dkts. 121-5 through 121-7) ("McMillan Declaration Exh(s). __"), and the Memorandum of Law in Support of Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 60(b)(1) (Dkt. 121-8) ("Plaintiff's Memorandum - Reconsideration").

On March 31, 2022, Plaintiff filed the Declaration of Kevin R. Lelonek, Esq. (Dkt. 126) ("Second Lelonek Declaration"), attaching exhibits A through G (Dkts. 126-1 through 126-7) ("Second Lelonek Declaration Exhs. __"), and separately filed the Memorandum of Law in Opposition to Defendant ebm-papst Inc.'s Motion for Sanctions (Dkt. 127) ("Plaintiff's Response").  On April 11, 2022, ebm filed Defendant ebm-papst

Inc.'s Opposition to Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 60(b)(1) (Dkt. 128) ("ebm's Response – Reconsideration"), attaching the Declaration of Joseph G. Fortner, Jr. [Esq.][2] in Support of Defendant's, ebm-papst Inc., Opposition [to] Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 60(b)(1) (Dkt. 128-1) ("Fortner Declaration"), and separately filed the Reply Memorandum to Plaintiff's Opposition to Defendant, ebm-papst Inc.'s Motion for Sanctions (Dkt. 129) ("ebm's Reply"), attaching the Declaration of Joseph G. Fortner, Jr. [Esq.] in Support of Defendant's, ebm-papst, Inc., Reply to Plaintiff's Objection to ebm-papst, Inc.'s Motion for Sanctions (Dkt. 129-1) ("Fortner Reply Declaration").  On April 21, 2022, Plaintiff filed the Reply Memorandum of Law in Further Support of Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 60(b)(1) (Dkt. 130) ("Plaintiff's Reply – Reconsideration").

On July 8, 2022, Plaintiff filed a motion to compel (Dkt. 131) ("Plaintiff's Motion – Compel"), attaching exhibits 1 to 54 (Dkts. 131-1 through 131-54) ("Plaintiff's Exh(s). __"), and the Memorandum of Law in Support of Plaintiff's Motion to Compel (Dkt. 131-55) ("Plaintiff's Memorandum – Compel").  On August 5, 2022, ebm filed in further support of ebm's Motion the Affidavit of Joseph G. Fortner, Jr. (Dkt. 135) ("Fortner Reply Affidavit"), attaching exhibits A through C (Dkts. 135-1 through 135-3) ("ebm's Exh(s). __").  On August 18, 2022, ebm filed the Memorandum in Opposition to Plaintiff's Motion to Compel (Dkt. 138) ("ebm's Response – Compel"), attaching exhibits A through C (Dkts. 138-1 through 138-3) ("ebm's Response Exh(s). __").  On August 29,

---

[2] Unless otherwise indicated, bracketed material has been added.

2022, Plaintiff filed the Memorandum of Law in Further Support of Plaintiff's Motion to

Compel (Dkt. 139) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

     Based on the following, Plaintiff's motion for reconsideration is DENIED;

Defendant ebm's motion for sanctions should be GRANTED insofar as ebm seeks the

sanction of dismissal with Plaintiff's motion to compel DISMISSED as moot.


### **FACTS**[3]

     Plaintiff Austin Air Systems, Limited ("Plaintiff" or "Austin Air"), is a New York

corporation in the business of manufacturing residential air purifiers which are sold

world-wide in more than 100 countries.  In 2015, after selling both its "standard" and

"junior" models of Plaintiff's air purifiers for more than ten years, the Chinese

government amended its regulations pertaining to air flow/decibel level standards for air

purifiers sold in China ("the revised standards"), after which Plaintiff was no longer

permitted to sell its air purifiers, which did not comply with the revised standards, in

China.  Plaintiff then set about redesigning and reengineering its air purifiers to meet the

revised Chinese standards, working with Defendant Sager Electrical Supply Company,

Inc. ("Sager"), a Massachusetts corporation engaged in the distribution and selling of,

as relevant here, fan motor assemblies designed and manufactured by Defendant ebm-

papst Inc. ("ebm"), a Connecticut corporation.  In July 2016, Plaintiff and Defendants

agreed that Defendants would design and engineer for Plaintiff the "Classic Standard"

and "Classic Junior" model air purifiers that would comply with China's revised

standards and supply Plaintiff with reengineered fan motor assemblies ("fan motor

---

[3] Taken from the pleadings and motion papers filed in this action.

assemblies") for use in Plaintiff's Classic Standard and Classic Junior model air purifiers ("air purifiers" or "units").

In October 2016, Defendants informed Plaintiff they had successfully engineered, designed and tested a 225 millimeter-sized fan motor assembly ("225 mm fan" or "standard fan"), to incorporate into a redesigned Classic Standard model air purifier which would then comply with the revised standards. In January 2017, Defendants advised Plaintiff they had successfully engineered, designed and tested a Classic Standard model air purifier incorporating the reengineered fan motor assembly which complied with the revised standards ("the prototype Classic Standard air purifier"). In March 2017, Plaintiff approved the 225 mm fan design and submitted a purchase order to Defendants for 3,045 standard fans. In April 2017, Defendants similarly advised Plaintiff that Defendants had successfully engineered, designed and tested a Classic Junior model air purifier incorporating the reengineered fan motor assembly ("190 mm fan" or "junior fan") that also complied with the revised standards (the "prototype Classic Junior air purifier"). In June 2017, Plaintiff approved the 190 mm fan and on June 20, 2017, Plaintiff submitted a purchase order for 12,480 units of the junior fans, Dkt. 39-2, and on June 23, 2017, submitted another purchase order for 7,560 units of the standard fans Dkt. 39-3. Plaintiff's purchase orders for the standard and junior fans were based on the test results provided by Defendants showing the reengineered fan motor assemblies complied with the revised standards ("the pre-order test results").

Plaintiff delivered the prototype air purifiers into which the standard and junior fans designed and manufactured by ebm had been incorporated ("the prototypes") to its Chinese distributor Austin Mecent ("Mecent"), for testing by Mecent to ensure

compliance with the revised standards.  After completing the testing, Mecent, in June

2017, informed Plaintiff the prototypes "just barely met the Chinese air flow/decibel level

standards" ("Mecent's testing"), SAC ¶ 24, and Plaintiff then informed Defendants of the

need to "ensure consistency" to avoid any "variation" from the Chinese revised

standards for air flow/decibel levels.  *Id*.  On June 27, 2017, Austin Air Vice President

Lauren McMillan ("McMillan"), informed Sager sales representative Allen Koscielny

("Koscielny") that Mecent advised the prototypes met the revised standards.  Plaintiff

retrofitted its manufacturing facility to manufacture both Classic Standard and Classic

Junior model air purifiers in accordance with the plans, specifications, the drawings, and

the prototype junior and standard fans in conjunction with Defendants' reengineered fan

motor assemblies.  On July 11, 2017, McMillan signed a "Non-Cancelable/Non

Returnable Customer Agreement" (the NC/NR agreement"), with Sager, applicable to

the purchase orders Plaintiff placed in June 2017, which Sager maintains was required

because the 225 mm and 190 mm fans were non-standard catalog items for which it

was unlikely there would be other customers.  In total, Plaintiff ordered 12,480 of the

190 mm Classic Junior fans at a unit price of $ 50.87, and 7,560 of the 225 Classic

Standard mm fans, at a unit price of $ 67.00, for an order in the amount of $

1,141,377.60.

In accordance with the purchase orders, Sager, in August 2017, commenced

shipping the fan motor assemblies manufactured by ebm to Plaintiff which, over several

months, accepted from Sager fan motor assemblies worth several hundred thousand

dollars for which Sager sent Plaintiff invoices some of which, but not all, Plaintiff paid.

Throughout the summer of 2017, Sager purchased from ebm fan motor assemblies for both the Classic Standard and Classic Junior model air purifiers, worth more than $ 573,000, which fan motor assemblies Plaintiff incorporated into its Classic Standard and Classic Junior air purifiers ("production units") for shipment to Mecent for distribution in China.  In October 2017, Mecent advised Plaintiff that neither the Classic Standard and Classic Junior production units met China's revised standards.  Plaintiff maintains Defendants tested the reengineered fan motor assemblies using electricity operating at 60 hertz ("Hz"), whereas China electricity operates at 50 Hz.[4]  Plaintiff further maintains Defendants, when testing the fan motor assemblies, knew China's electricity operated at 50 Hz, but that ebm's Connecticut manufacturing facility where the testing occurred did not have the required equipment to necessary to operate electricity at 50 Hz.

Plaintiff alleges that not only is it unable to distribute the production unit Classic Standard and Classic Junior model air purifiers in China, but also that Plaintiff's reputation has been damaged which has harmed Plaintiff's ability to distribute its air purifiers in other countries as well.

---

[4] Plaintiff's earlier motion for leave to file the SAC (Dkt. 86), was predicated on Plaintiff's argument that it did not learn of the discrepancy with the electricity Defendants used to test the prototypes in December 2017 and January 2018 until deposing ebm witness Duane Paul on June 22, 2021.  Dkt. 86-38 at 3-4, 10-11.

## DISCUSSION

1. **Motion for Reconsideration**[5]

Plaintiff moves for reconsideration of the D&O insofar as the undersigned found Plaintiff had control of its Chinese distributor, who Plaintiff now refers to as "Shenzen Mecent Technology Co. Ltd.," sufficient to compel Austin Air to retrieve from China and provide to Defendant ebm the eight specimens or "prototypes" including four of each of the reengineered Classic Standard and Classic Junior models of the air purifiers and the incorporated ebm fan motor assemblies, along with the containers in which they were sealed when originally shipped by Plaintiff.[6]  Plaintiff's Memorandum - Reconsideration at 2.  In support of its motion, Plaintiff maintains Mecent is an unaffiliated entity with whom Plaintiff engages only in arms-length transactions such that Plaintiff has no practical ability to obtain the prototype air purifiers from Mecent.[7]  *Id*. at 3-5.  In

---

[5] Motions for reconsideration are non-dispositive.  *Holmes v. Fischer*, 2013 WL 3187083, at * 10 (W.D.N.Y. June 20, 2013).

[6] The essence of ebm's argument is that while the prototype Classic Standard and Classic Junior air purifiers complied with China's revised standards, the production units of the subject air purifiers either did not comply as manufactured by Plaintiff, or were not sufficiently packaged for international shipment to its Chinese distributor such that the production units incurred damage in transit which caused the production units to fail to comply with the revised standards.  Ebm's Memorandum at 9-10.

[7] In particular, in Requests for Production dated January 3, 2020, ebm initially requested Plaintiff produce sample production unit air purifiers delivered to Mecent, Dkt, 116-1 at 12, and emphasized in a March 6, 2020 letter to Plaintiff, Dkt. 116-1 at 18-18, that Plaintiff's assertion it did not know the location of the sample or the prototypes was "rather surprising, given that Austin Air's entire case is premised upon supposed air flow and decibel level issues in such air purifiers, and upon the claim that the Defendants' 'prototype' is of some significance," as well as that it was "hard to fathom" how Plaintiff could prove its case without producing both sample production units delivered to Mecent, along with the prototypes. Plaintiff then responded on January 4, 2021, that neither sample production units nor the prototypes were available.  Dkt. 116-1 at 21-22.  On January 21, 2022, Plaintiff advised ebm it was attempting to have "Mecent" ship back several sample production units, conceding they were "central" to all parties' expert discovery in this action.  Dkt. 116-1 at 42.  On February 11, 2021, ebm again wrote Plaintiff attempting to obtain the prototypes or an explanation of where ebm believed the prototypes were located.  Dkt. 116-1 at 46-47.  Plaintiff never delivered the prototypes to ebm but, on May 25, 2021, advised ebm that Mecent had provided price quotations and that ebm could purchase sample production air purifier units from Mecent.  Dkt. 116-1 at 62. As of the filing of the instant motions, Plaintiff had failed to produce either the prototypes or sample production unit air purifiers.

opposition, Defendant ebm argues Plaintiff's assertion that it does not have control over Mecent is a "red herring" because regardless of whether Plaintiff controls Mecent, Plaintiff could have and should have preserved the prototype air purifiers as shipped, yet failed to use its relationship and contacts with Mecent to secure the prototypes for delivery to Defendants in discovery upon Defendants' likely request.  ebm's Response - Reconsideration at 4-7.  In further support of reconsideration, Plaintiff reiterates its argument that in ordering Plaintiff to produce to Defendants the prototypes, the court "either overlooked or misunderstood the relationship between Austin Air and Mecent." Plaintiff's Reply – Reconsideration at 3-5.

"The Federal Rules of Civil Procedure do not recognize a motion for 'reconsideration.'" *Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 28 (W.D.N.Y. 2014) (citing cases).  As such, a motion for reconsideration "may be construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b)."[8]  *Id.*  Here, because Plaintiff is requesting reconsideration of the D&O concerning discovery (Dkt. 107), Plaintiff's Motion is construed as seeking reconsideration under Rule 60(b) which provides for relief "from a final judgment, order, or proceeding . . . ."  *See Davis v. 2192 Niagara Street, LLC*, 2016 WL 6122450, at * 2 (W.D.N.Y. Oct. 20, 2016) (reconsidering report and recommendation under Rule 60(b) (citing *Mikulec*, 302 F.R.D. at 28)).  "The standard for granting a [reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d

---

[8] Fed.R.Civ.P. 60(b) specifically provides for relief from "a final judgment, order, or proceeding."

255, 257 (2d Cir. 1995). "'The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court . . . .'" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks and citation omitted). "A motion for reconsideration should be granted only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court," *Mikulec*, 302 F.R.D. at 28, because a motion for reconsideration is not a vehicle for "taking a 'second bite at the apple.'" *Rafter v. Liddle*, 288 Fed.Appx. 768, 769 (2d Cir. Aug. 13, 2008) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (citing cases)). Nor will the court consider facts not in the record to be facts "overlooked" by the court. *Rafter*, 288 Fed.Appx. at 769. In the instant case, Plaintiff's motion must be DENIED because Plaintiff has failed to identify any "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" to support altering the court's determination that there is a relationship between Plaintiff and Mecent.

The court never found, as Plaintiff asserts, Plaintiff's Memorandum – Reconsideration at 1, 4-5, that there is any ownership or subsidiary or affiliate relationship between Plaintiff and Mecent; rather, the court merely found that, based on the record of Defendant ebm's motion to compel, there exists a relationship between Plaintiff and Mecent supporting the determination that Plaintiff was in the best position

to obtain from Mecent the prototypes on which the Mecent testing was conducted which corroborated the pre-order testing.  In particular, Plaintiff avoids using the name "Austin Mecent" in the original Complaint, FAC, and SAC, referring instead only to "China," *see*, *e.g.*, Complaint ¶ 19, and "Plaintiff's Chinese customer," *see*, *e.g.*, FAC ¶¶ 23, 26; and SAC at ¶¶ 24, 27.  There are, nevertheless, several references in the record by Plaintiff to Austin Air's Chinese distributor as "Austin Mecent."  *See*, *e.g.*, Dkt. 79-2 at 3 (copy of Austin Air's website, www.austinair.com, as it appeared on June 11, 2021, listing "Austin Mecent" as "China Official Brand" with an e-mail address of mailto:mecent@austinair.cn); Dkt. 79-3 at 7 (January 4, 2021 letter from Plaintiff's former counsel Ralph C. Lorigo, Esq. to ebm's counsel, Joseph G. Fortner, Jr., advising, "upon information and belief, Austin Air provided the prototype to its Chinese distributor, Austin Mecent, who then provided the prototype to the Chinese government."); Dkt. 88 at 7 (Plaintiff, in responding in opposition to ebm's motion to compel (Dkt. 79), referring to Plaintiff's distributor in China as "Austin Mecent"); Dkt. 121-6 at 18-24 ("Commercial Invoices" from Plaintiff with dates falling in years 2014 and 2015 instructing merchandise be shipped to "Austin-Mecent" at "Shenzhen Mecent Technology Co., Ltd." in China and listing the recipient's e-mail address as "austinairma@gmail.com"), and Dkt. 128-1 at 29 (June 2, 2021 e-mail from Plaintiff's current counsel to Defendants' attorneys including, *inter alia*, ebm's counsel Mr. Fortner, regarding this action and instructing Defendants' attorneys that they can order the subject air purifiers "directly from austinmecent's website. . . .").  Further, Plaintiff repeatedly represented to ebm that Plaintiff was attempting to obtain from Mecent the original prototype air purifiers on which Mecent conducted pre-order testing in China.  *See* Dkt. 58-1 (January 21, 2021

e-mail from Plaintiff to Defendants' attorneys, including, *inter alia*, ebm's counsel advising that although Plaintiff shipped the prototype air purifiers received from ebm to Mecent in China, where Plaintiff believed the prototypes remained although Plaintiff asserted it did not own or have control over the prototypes, Plaintiff was "endeavoring to have Mecent" ship the prototypes back from China, and acknowledging the prototypes are "central" to the case). Accordingly, it was based on Plaintiff's own representations that the court ordered Plaintiff to produce to ebm the original prototype air purifiers, on which Mecent conducted pre-order testing and confirmed the prototype air purifiers, into which ebm's reengineered fan motor assemblies were incorporated, complied with China's revised standards and on which Plaintiff relied in placing orders for the reengineered fan motor assemblies with Defendants. Plaintiff thus has failed to demonstrate reconsideration is necessary based on "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.

Plaintiff's Motion seeking reconsideration of the D&O therefore is DENIED.

## 2.    Motion for Sanctions

Defendant ebm moves pursuant to Fed.R.Civ.P. 37(b) ("Rule 37(b)") for sanctions, specifically dismissal of the action, against Plaintiff for failing to comply with court-ordered discovery directing Plaintiff produce to ebm the original prototype air purifiers with fan assemblies along with the containers in which the prototypes were sealed and shipped to China for testing by Mecent, along with the costs of the motion. Such a motion, if granted, is dispositive. *See Kiobel v. Millson*, 592 F.3d 78, 100 n. 11 (2d Cir. 2010). In support of ebm's Motion, ebm argues that inspection of the

prototypes, along with the packaging in which they were sealed and shipped, is critical to ebm's asserted defense attributing the air purifiers' failure to meet China's revised standards both to Plaintiff's designs and deficiencies in manufacturing and quality control.  ebm's Memorandum at 1-2.  Defendant ebm further maintains Plaintiff's repeated delays in producing the prototype air purifiers is predicated on Plaintiff's failure to take the necessary steps to secure and preserve the prototype air purifiers despite knowing the air purifiers, and their operation, are "central" to ebm's defense, *id*. at 3-6, such that the destruction or loss of the prototype air purifiers amounts to spoliation of evidence warranting the severe sanction of dismissal of the action.  *Id*. at 9-13. Alternatively, ebm requests as a spoliation sanction several adverse factual determinations each of which shifts the responsibility for the production units' failure to comply with the revised standards to Plaintiff either based on Plaintiff's manufacture, assembly, testing, packaging, or shipping of the production units.  *Id*. at 13-16. Defendant ebm also seeks an award of costs incurred in connection with this motion. *Id*. at 16.  In opposition, Plaintiff maintains that it cannot be compelled to produce what it does not possess, Plaintiff's Response at 6, that ebm has not established Plaintiff's inability to locate and produce the prototypes is the result of any willful destruction when an obligation to preserve existed, *id*. at 6-8, and ebm's failure to carry its burden of demonstrating spoliation negates any basis for sanctions particularly as ebm is in possession of production units including two Classic Standard and two Classic Junior production unit air purifiers provided to ebm by Plaintiff in late 2017, one Classic Standard and one Classic Junior production unit air purifiers that ebm obtained from Mecent in 2021, and two production unit air purifiers obtained in 2021 from U.S.

domestic sales sources, as manufactured and assembled by Plaintiff in conformity with the design of the requested prototypes, rendering production of the prototypes at issue unnecessary to avoid any undue prejudice.  *Id*. at 8-10.  Plaintiff further maintains the arguments asserted in opposition to ebm's request for the sanction of dismissal likewise apply to ebm's alternative request for a sanction of an adverse factual determination. *Id*. at 10-15.  In further support of sanctions, ebm explains that after the instant motion was filed on March 10, 2022, Plaintiff's counsel sent ebm a letter advising that the "newly manufactured" production units shipped to ebm in February 2022, purportedly as directed by the D&O, contained "1 microfarad capacitors, not 3.5 microfarad capacitors" and Plaintiff intended to produce new standard units with the 3.5 microfarad capacitors, as included in the design for the prototypes, which Plaintiff would then send to ebm, which further illustrates the unlikelihood that any newly manufactured production units would be the equivalent of providing ebm with the prototypes.  ebm's Reply at 2-3. Defendant ebm also argues that none of the three options Plaintiff has offered, including (1) ordering production units from Plaintiff that would be compiled from Plaintiff's existing stock and parts, (2) manufacturing four new production units, or (3) some combination of the first and second options, would not satisfy the need to inspect the prototypes to  determine why the production units do not meet the revised standards when the testing on the prototypes by both ebm and Mecent did, *id*. at 1-2, that Plaintiff, in opposing the instant motion, ignores that Plaintiff had a duty to secure and preserve the prototypes, which Plaintiff admits are no longer available, since 2017, *id*. at 4-6, and that Plaintiff's willful noncompliance with ebm's repeated discovery requests establishes

Plaintiff is not blameless for the failure to comply. *Id*. at 6-9. The record does not indicate the reason for the unavailability of the prototypes.

A district court has broad authority to impose sanctions for violations of discovery obligations, such as the spoliation of evidence or failure to comply in a timely manner with an appropriate discovery request. *Arista Records, LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 138 (S.D.N.Y.2009). A court may also sanction parties for sustained uncooperative conduct during discovery. *Residential Funding Corp. v. DeGeorge Financial Corp*., 306 F.3d 99, 113 (2d Cir. 2002). Among the sanctions that may be imposed, dismissal of an action ("terminating sanctions"), is the harshest. *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 22-23 (S.D.N.Y.) (citing Fed.R.Civ.P. 37(b)-(f)), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010). "To impose sanctions upon a party for violating a discovery obligation, the court must find that the party acted with a 'culpable' state of mind." *Id*., 271 F.R.D. at 23. Significantly, "in the Second Circuit, negligence is sufficient to establish culpability." *Id*. (citing *Residential Funding Corp.,* 306 F.3d at 108).[9]

Relevant here, to make a finding of spoliation, the court must first determine that the allegedly spoliating party had a duty to preserve the evidence at issue. *See Zubulake v. USB Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("It goes without saying that a party can only be sanctioned for destroying evidence if it had a duty to preserve it."). Such duty is determined based on two related inquiries: when does the

---

[9] Although the sanction of dismissal under Rule 37(e) requires a finding of actual intent to deprive the requesting party of the use of the spoliated evidence, Ruel 37(e) applies only to electronically stored information ("ESI"). *See Moody v. CSX Transportation, Inc*., 271 F.Supp.3d 410, 425 (W.D.N.Y. 2017) (holding that although a laptop computer, which was lost and thus could not be produced in response to a discovery request, is a tangible object, the failure to preserve the laptop also resulted in the failure to preserve the ESI stored on it, supporting Rule 37(e) sanctions).

duty to preserve evidence attach, and what evidence must be preserved.  *Zubulake,* 220 F.R.D. at 216.  In addition to preserving any evidence requested in discovery, the duty to preserve relevant evidence can attach prior to a discovery request, such that the duty to attach arises "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."  *Zubulake,* 220 F.R.D. at 216 (quoting *Fujitsu Ltd. v. Federal Exp. Corp.,* 247 F.3d 423, 436 (2d Cir. 2001).  Further, the evidence that must be preserved includes, *inter alia,* physical evidence[4] that the party knows or reasonably should know is relevant to claims or defenses in the action, is reasonably calculated to lead to the discovery of admissible evidence, *or "is reasonably likely to be requested during discovery*."  *Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (internal quotation omitted; italics added).

"The Federal Rules of Civil Procedure make parties responsible not only for evidence in their immediate possession, but also evidence within their 'control.'" *R.F.M.A.S., Inc.*, 271 F.R.D. at 24 (citing Fed.R.Civ.P. 34(a)(1), and *Leser v. U.S. Bank Nat. Ass'n,* 2010 WL 1945806, *1 (E.D.N.Y. May 13, 2010)).  "Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence."  *Id.* (citing *Leser,* 2010 WL 1945806 at *1; *Bank of N.Y. v. Meridien BIAO Bank of Tanzania Ltd.,* 171 F.R.D. 135, 146–7 (S.D.N.Y.1997); and *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y.1992)).  "To fulfill this preservation obligation, a litigant must take affirmative steps to prevent inadvertent spoliation.  At the outset of the litigation, each party must identify all sources

of potentially relevant evidence and implement a 'litigation hold' suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." *Id*.

Further, a district court has broad discretion to determine an appropriate sanction for discovery violations based on the facts of the particular case. *Residential Funding Corp.,* 306 F.3d at 101; *Arista Records, LLC,* 633 F.Supp.2d at 141. The appropriate sanction will "(1) deter parties from violating discovery obligations; (2) place the risk of an erroneous judgment on the party that wrongfully created the risk; and (3) restore the prejudiced party to the same position that it would have been in absent the discovery violation by an opposing party." *R.F.M.A.S., Inc*., 271 F.R.D. at 24 (citing *West,* 167 F.3d at 779 (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998))). Although a court should always impose the least harsh sanction that will accomplish these goals, *Passlogix, Inc. v. 2FA Tech. LLC,* 708 F.Supp.2d 378, 420–21 (S.D.N.Y.2010), how severe a sanction is warranted depends on the extent of the discovered party's non-compliance with discovery obligations, the degree of that party's culpability, and the extent to which the non-compliance prejudiced the other parties. *R.F.M.A.S., Inc*., 271 F.R.D. at 24. "The noncompliant party bears the burden to demonstrate that the other parties did not suffer any prejudice from the spoliation." *Id*., 71 F.R.D. at 24-25. In the instant case, the circumstances support the severe sanction of dismissal.

In particular**,** the court agrees with ebm's assertion that the prototype air purifiers are essential to this action particularly because it was the prototype air purifiers which Mecent tested in June 2017 and determined the prototype "just barely" met China's

revised standards.  This is consistent with the pre-order testing performed by ebm on

the standard and junior fan motor assemblies, respectively in January and April 2017,

that showed the redesigned and reengineered fan motor assemblies complied with

China's revised standards.  That Mecent later advised Plaintiff the production unit air

purifiers, *i.e.*, the air purifiers manufactured in Plaintiff's retrofitted manufacturing facility

and into which ebm's redesigned and reengineered fan motor assemblies were

incorporated, did not meet the revised standards begs the question of whether the

deficient performance of the production units is attributed to some adjustment or

alteration incorporated into the production unit air purifiers that caused the production

such air purifiers to perform less efficiently than the prototypes, or to inadequately

securing the production units to ensure their physical integrity prior to shipping the

production units to China.  Significantly, Plaintiff, upon being notified that the production

unit air purifiers were not performing at the same revised standard as the prototypes,

should have immediately understood that investigation of the matter would necessarily

involve inspecting and further testing of the prototypes to determine the cause of the

variation in performance between the prototype and production unit air purifiers.

Moreover, Mecent's notification in June 2017 that testing of the prototypes yielded

results that "just barely" met the revised standards should have alerted Plaintiff of

possible future noncompliance issues.  In any event, without the prototypes, no

comparison of the production units, which did not meet China's revised standards, with

the prototypes, which both ebm and Mecent found did meet the revised standards, is

possible.  As such, the alternative sanction of an adverse jury instruction involving a

factual determination that the prototypes complied with China's revised standards,

rendering whether ebm tested the prototypes using electricity operated at 60 Hz instead of at 50 Hz, irrelevant, which would necessarily result in a finding in ebm's favor on Plaintiff's breach of contract and fraud claims. These circumstances are sufficient to warrant the severe sanction of dismissal. Accordingly, ebm's Motion seeking dismissal of the action for Plaintiff's spoliation of the prototypes should be GRANTED.

With the granting of ebm's motion, the court also finds Plaintiff is entitled, pursuant to Rule 37(b)(2)(C) to an award of the costs, including attorney fees, incurred in connection with this action. Fed.R.Civ.P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."). Accordingly, Plaintiff should be required to show cause **within twenty (20) days** of the District Judge's adoption of this Report and Recommendation, why Defendant ebm's expenses, including reasonable attorney's fees, should not be awarded ebm as required by Rule 37(b)(2)(C), after which ebm should file any response **within ten (10) days.**

**3.    Motion to Compel**

With the dismissal of the Second Amended Complaint as a sanction for Plaintiff's failure to secure and preserve, and thus spoliation of, the prototype air purifiers, Plaintiff's Motion to Compel is DISMISSED as moot.

**CONCLUSION**

Based on the following, Plaintiff's motion for reconsideration (Dkt. 121) is

DENIED; Defendant ebm's motion for sanctions (Dkt. 115) should be GRANTED insofar

as ebm seeks the sanction of dismissal with Plaintiff's motion to compel (Dkt. 131)

DISMISSED as moot.  Plaintiff should be ORDERED to show cause why ebm should

not be awarded costs, including attorney fees incurred in connection with making the

motion **within twenty (20) days** of this Decision and Order, after which ebm should file

any response **within ten (10) days.**

SO ORDERED as to Plaintiff's motions
for reconsideration and to compel,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to the recommendation
that Defendant ebm's motion for the sanction of
dismissal be granted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    October 27th, 2022
          Buffalo, New York

22

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     October 27th, 2022
             Buffalo, New York